[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16412
_____

D.C. Docket No. 0:05-cv-60845-KAM

L.M.P.,
on behalf of
E.P., D.P., and K.P.,
minors,

Plaintiffs-Appellants,

versus

SCHOOL BOARD OF BROWARD COUNTY, FLORIDA,
INDIVIDUAL DEFENDANTS, et al.,

Defendants-Appellees.

_____

No. 16-16418
_____

D.C. Docket No. 0:10-cv-60032-KAM

C.C. and P.C.,
on behalf of A.C., a minor, and on behalf of all

other similarly situated disabled children,

                                        Plaintiffs-Appellants,

                            versus

SCHOOL BOARD OF BROWARD COUNTY, et al.,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 19, 2018)

Before WILSON and ROSENBAUM, Circuit Judges, and TITUS,[*] District Judge.

TITUS, District Judge:

This Individuals with Disabilities Education Act ("IDEA") case comes before this Court after a twelve-year battle by two sets of parents on behalf of their children to receive the specific therapy they believed their children deserved. Beginning in 2005, Appellant L.M.P., a mother of triplets acting individually and on her children's behalf, sought the aid of the courts to force Appellee School Board of Broward County ("School Board") to include one-on-one Applied Behavioral Analysis ("ABA") therapy in each child's Individual Education Plan

---

[*] Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

2

("IEP"). Appellants C.C. and C.P., parents acting individually and on their child's behalf, intervened in those efforts to try to achieve the same therapy for their child. Appellants allege that the School Board's refusal to include the desired therapy in the children's IEPs reflects its predetermined policy of never including any ABA-based method or strategy in a child's IEP, in violation of the IDEA, 20 U.S.C. §§ 1400–1482. But as much as Appellants want to overturn their children's original IEPs based on impermissible predetermination, they do not have standing to challenge the policy that they allege exists. While they argue to the contrary, an ABA-based therapy was, in fact, included in their children's IEPs, albeit not the specific one that they desired, thus defeating their standing to challenge an alleged policy that was not applied to them.

The Court will explain how it reached this conclusion through exploration of what ABA is and how it fits into the IDEA framework.

### 1. Applied Behavioral Analysis[1]

ABA is an applied science whose purpose is to produce socially significant changes in behavior. D.E. 549 at 2–3. ABA is not a method of instruction or method of teaching. *Id.* at 2. Rather, it is a broad umbrella under which numerous intervention strategies fall. *Id.* There is no singular technique that must be used in

---

[1] In its discussion of ABA, the Court adopts the district court's extensive factual findings on this issue in its comprehensive and richly-documented Findings of Fact and Conclusions of Law, issued after the bench trial held below. *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cty.*, No. 05-cv-60845-KAM (S.D. Fla. Sept. 7, 2016), ECF No. 549. Citations in this discussion are to "D.E. 549."

all circumstances. *Id.* at 5. There are hundreds of different ABA intervention strategies that can be provided. *Id.*

One strategy is called discrete trial training ("DTT"). *Id.* DTT is a highly structured form of implementing the principles of reinforcement and stimulus control. *Id.* Although DTT is often done one-on-one, it can also be done in group settings when appropriate. *Id.* at 6. Just as DTT is a method under the umbrella of ABA, there are multiple intervention strategies that have been developed under the umbrella of DTT. *Id.* Different methods of DTT include the Lovaas method, the pivotal response method, and the Picture Exchange Communication System ("PECS") method. *Id.* PECS is a scientifically-validated ABA-based intervention strategy for teaching communication skills to children with autism. *Id.*

## 2. Individuals with Disabilities Education Act

The IDEA is a comprehensive statute that sets forth the intent of Congress that children with disabilities be entitled to a "free appropriate public education" ("FAPE"). *See Winkleman ex rel. Winkleman v. Parma City Sch. Dist.*, 550 U.S. 516, 523 (2007) (citation omitted). Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a FAPE by offering each student special education and related services

under an IEP.  20 U.S.C. § 1412.[2]  An IEP must include "a statement of the special education and related services and supplementary aids and services . . . to be provided to the child."  *Id*. § 1414(d)(1)(A)(IV).  Determining an IEP "is supposed to be the culmination of a collaborative process between parents, teachers, and school administrators outlining the student's disability and his educational needs, with the goal of providing the student with a [FAPE]."  *R.L. v. Miami-Dade Cty. Sch. Bd*., 757 F.3d 1173, 1177 (11th Cir. 2014) (citing 20 U.S.C. §§ 1401(9), 1412(a)(1)(A), 1414(d)(1)(A)–(B), (d)(3)).  Once an IEP has been determined, it "should comply with the procedural and substantive requirements set forth in the IDEA and should be 'reasonably calculated to enable the child to receive educational benefits.'"  *Id*. at 1177 (quoting *J.K. ex rel. J.S.K. v. Hendry Cty. Sch. Bd.*, 941 F.2d 1563, 1571 (11th Cir. 1991)).

The IDEA's framework recognizes that not all stakeholders will agree on all aspects of an IEP.  *Id.*  The statute thus provides for procedural safeguards through which a child's parents, if they believe that the IEP does not comply with the IDEA's requirements, can challenge the IEP.  20 U.S.C. § 1415; *R.L.*, 757 F.3d at 1177.  The parents "may unilaterally withdraw their child from the school system and pursue alternative placement options."  *R.L.*, 757 F.3d at 1177.  Even if the

---

[2] Citations to the IDEA are to the language that is now in effect.  A comparison between the language in effect today and the language in effect at the time the conduct at issue took place shows no material change to the provisions relied upon in this case.

parents do not withdraw their child, they, or the state, "can file a complaint with the appropriate state administrative agency and get a due process hearing before an [Administrative Law Judge ("ALJ")] to resolve the dispute."  *Id.* (citing 20 U.S.C. § 1415(f)(1)(A); Fla. Stat. § 1003.57(c)).  The complaint may be based on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6).  Either party can then challenge the ALJ's decision by appealing to either a state court or a United States District Court.  *R.L.*, 757 F.3d at 1178 (citing 20 U.S.C. § 1415(i)(2)(A)).

A court has broad discretion to grant the relief it deems "appropriate in light of the IDEA's purpose."  *Id*.  In reviewing a challenge under the IDEA, the court will conduct a two-part inquiry: "First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07 (1982) (footnotes omitted).  The state must meet both the procedural and substantive prongs of the *Rowley* test for the court to find the state has complied with the IDEA.  *See id*. at 207.  Only procedural violations that cause a party substantive harm will entitle plaintiffs to relief.  *See Sch. Bd. of*

6

*Collier Cty. v. K.C.*, 285 F.3d 977, 982 (11th Cir. 2002); *Doe v. Ala. State Dep't of Educ.*, 915 F.2d 651, 660–63 & nn.9–10 (11th Cir. 1990).

In this case, Appellants have asserted challenges solely under the procedural prong of *Rowley* and have explicitly disavowed any challenge under the substantive prong.  Appellants' Consol. Reply 6.  Thus, any question as to the sufficiency of the IEPs to provide educational benefits to the children of the Appellants is not before this Court.

### 3.  Background and Procedural History[3]

This case involves consolidated appeals.  Appellant L.M.P. is the mother of E.P., D.P., and K.P. (the "Triplets").  Appellants C.C. and P.C. are the parents of A.C.  The parties all appeal from the same district court order issued after a joint bench trial.  The bulk of the factual background pertains to the Triplets as reflected in the district court's factual findings.

The Triplets were born on January 4, 2001 and were diagnosed with autistic spectrum disorder ("autism") in 2003.  D.E. 549 at 10.  A.C. was also diagnosed with autism at an early age.  *Id.* at 16.  Autism is a neurological disorder that results in deficits in social communication and social interaction.  *Id.* at 2.  An autistic child qualifies as a "child with a disability" under the IDEA.  20 U.S.C. § 1401(3)(A).

---

[3] The Court adopts the background facts as found by the district court in its Findings of Fact and Conclusions of Law.  *L.M.P.*, No. 05-cv-60845-KAM, ECF No. 549.

In May 2003, shortly after the Triplets' diagnosis, their father had the children examined by David Garcia, the clinical supervisor for Behavioral Analysis, Inc. ("BAI"). *Id.* at 10. After the examination, the father hired BAI to provide each child with thirty hours per week of one-on-one ABA-based therapy. *Id.*

On December 8, 2003, a meeting took place between the School Board and the Triplets' parents to discuss the transition of services their children had been receiving at the early intervention stage.[4] *Id.* at 12. The parents expressed their desire that the Triplets continue receiving the thirty hours per week of one-on-one ABA-based therapy provided by BAI. *Id.* Carol Bianco, one of the School Board employees present at the meeting, allegedly advised the parents that ABA-based therapy was not provided by the School Board as an intervention service. *Id.*

After the transition meeting, the School Board's team evaluated the Triplets. *Id.* Following the evaluations, the School Board scheduled a meeting for December 18, 2003 to develop IEPs for the children. *Id.* at 12–13. Before the scheduled meeting, the Triplets' father requested copies of the School Board's evaluations, as a result of which the meeting was postponed until January 5, 2004. *Id.* at 13. The Triplets' father attended the meeting with a court reporter and

---

[4] Under Part C of the IDEA, states must provide disabled children under three years of age with an individualized family service plan, setting forth specific early intervention services necessary for the toddler or infant and their family. 20 U.S.C. §§ 1432–1435.

Garcia. *Id*. The father renewed his request for the Triplets to receive thirty hours per week of one-on-one ABA-based therapy. *Id*. The meeting ended without a resolution, and a continuation was scheduled for February 3, 2004. *Id*. The parents were notified of the meeting, but did not attend. *Id*.

At the February 3, 2004 meeting, the School Board developed initial, temporary IEPs for the Triplets. *Id*. at 13–14. The initial IEPs stated under the "assistive technology" section that each child would receive instruction using the PECS method. *Id.* at 14. The School Board sent a letter including the initial IEPs to the Triplets' parents. *Id.* On February 5, 2004, the father notified the School Board that the parents did not consent to the IEPs. *Id.* at 14–15. The parents ultimately did not enroll the Triplets in any of the Broward County public schools for the 2004–2005 academic year. *Id*. at 15. The Triplets continued to receive one-on-one ABA-based therapy from BAI until July 2004 at their parents' expense. *Id*.

On August 17, 2004, the parents requested a due process hearing, which took place before an ALJ on January 24, 25, 27, and 28, 2005. *Id*. The parents requested reimbursement for the ABA-based therapy provided to the Triplets since they turned three years old that the parents claimed the state was obligated to cover under the IDEA. *Id*. On April 25, 2005, the ALJ issued a final order denying any relief to the Triplets and their parents. *Id*. at 15–16.

The School Board conducted A.C.'s IEP meeting on July 17, 2007. *Id.* at 16. C.C. and A.C.'s private behavioral specialist attended the meeting. *Id.* The IEP developed for A.C., similar to the Triplets', listed under the "assistive technology" section "picture/symbol communication system." *Id.* The district court found that this was a reference to the PECS method. *Id.*

L.M.P. filed the original Complaint in this case on May 24, 2005. *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cty.*, No. 05-cv-60845-KAM, ECF No. 1. The final version of the Complaint asserted four counts: (1) a claim asserting multiple violations of the IDEA, including that the School Board engaged in improper predetermination regarding the inclusion of ABA therapy in IEPs; (2) a claim under Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); (3) a claim under Florida Statute § 1003.57; and (4) a claim under 42 U.S.C. § 1983. D.E. 549 at 17. In essence, Appellants argued that the School Board subjected them to a predetermined policy of always denying ABA services. *Id.*

On January 22, 2008, C.C. and P.C. filed a Motion to Intervene, alleging predetermination issues and other claims similar to those asserted by L.M.P., which the court granted on March 20, 2008. *L.M.P.*, No. 05-cv-60845-KAM, ECF Nos. 177, 190. The court, however, later bifurcated the cases on January 8, 2010.[5] *Id.* ECF No. 283.

---

[5] C.C. and P.C.'s separate case was docketed under Case No. 10-cv-60032-KAM.

After the court disposed of the § 1983 claims in both cases on summary judgment in favor of the School Board, the parties agreed to consolidate the cases for trial. D.E. 549 at 18–19. The district court held a bench trial on the remaining claims. *Id.* On September 7, 2016, the district court entered its Findings of Fact and Conclusions of Law. *Id.* The district court found for the School Board on all counts except for one. *Id.* at 32. The court found that the School Board had impermissibly excluded the Triplets' parents from attending the initial child study meeting. *Id.* However, because that procedural violation was harmless, the court only awarded nominal damages of one dollar. *Id.* at 32–33. The School Board did not challenge this finding. The only conclusion Appellants appeal is the district court's finding that Appellants lacked standing to challenge an alleged School Board policy of never including ABA services in IEPs.

## 4. Standing

Appellants challenge the district court's finding that "even if the School Board has a policy of not including ABA services on an IEP, [Appellants] in this case lack standing to challenge such a policy because it was not applied to them." D.E. 549 at 28. The relevant question, then, for this Court to decide is narrow: did Appellants suffer harm by the School Board's alleged policy of never including ABA services in an IEP, i.e., did they suffer an injury in fact.

11

Article III of the U.S. Constitution limits the judicial power of the federal courts so that they may only exercise jurisdiction over "Cases" and "Controversies." U.S. Const. art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Accordingly, subject matter jurisdiction requires a justiciable case or controversy within the meaning of Article III. *See Allen v. Wright*, 468 U.S. 737, 750–51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Standing constitutes one component of justiciability. *Lujan*, 504 U.S. at 560–61. Whether a plaintiff has standing presents a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To establish standing, a plaintiff seeking to invoke this Court's jurisdiction bears the burden of demonstrating: (1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. In order to satisfy the first prong, the injury in fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). The

12

Court reviews issues of standing *de novo*. *Eng'g Contractors Ass'n of S. Fla. Inc. v. Metro. Dade Cty.*, 122 F.3d 895, 903 (11th Cir. 1997).

All of the children's IEPs either explicitly listed the PECS method or listed a clear reference to PECS under the "assistive technology" section. D.E. 549. at 28. This fact is not contested. The district court also found that the PECS method "is a scientifically-validated (i.e., effective) ABA-based intervention strategy that is a form of DTT." *Id.* at 28. Appellants do not challenge the district court's finding that the PECS method is an ABA-based intervention. Instead, they argue that "the singular reference to the PECS in the assistive technology portion" of the children's IEPs "was never meant by the School Board to be anything more than a suggestion to the schoolroom teacher." Appellants' Consol. Br. 52. "[A]s written, [they argue that] the parents would be left with no ability to enforce the use of PECS for any particular length or time, or for any particular purpose in educating their Children." *Id*. Appellants assert that the inclusion of PECS was never intended to be the adoption of the specific ABA-based program the children had been receiving, and thus evinces the School Board's application of its policy of refusing to include ABA-based services, generally. *Id*. at 53.

Despite any possible merit that Appellants' arguments may have as to the *substantive* quality or sufficiency of the inclusion of the PECS method in the children's IEPs, they are irrelevant under the *procedural* prong of *Rowley*. The

narrow question here, as stated above, is whether Appellants suffered harm from an alleged procedural violation.  Appellants allege that their injury in fact was the "denial of their [sic] right of their parents to meaningfully participate in the IEP process," caused by the School Board's alleged predetermined policy of denying ABA-based services across the board.  Appellants' Consol. Br. 55.  Appellants attempt to show denial of meaningful participation by asserting that the School Board's policy is to presumptively deny the inclusion of all ABA-based services in IEPs.  But, as the district court found, each child's IEP in this case included an ABA-based intervention strategy.  Therefore, the School Board's inclusion of an ABA-based service in the children's IEPs in this case, regardless of how it was intended to be used or whether it matched the specific services requested by the parents, refutes Appellants' argument that they were denied meaningful participation.  Appellants simply *were not denied any* ABA-based service in their children's IEPs.

The question of whether the included ABA-based intervention strategy was comprehensive enough or appropriate for the children's particular needs is a question that falls under the substantive *Rowley* prong, i.e., whether the way in which the PECS method was utilized in the IEP was "reasonably calculated to enable the child to receive educational benefits."  *See Rowley*, 458 U.S. at 206–07.  Appellants could have challenged the IEP on substantive grounds or they could

14

have accepted the IEP and then challenged the sufficiency of the School Board's implementation of the IEP, specifically regarding the implementation of the PECS program. *See N.N.J. ex rel. L.J. v. Sch. Bd. of Broward Cty.*, 850 F. Supp. 2d 1315, 1319 (11th Cir. 2012). But they chose not to bring any substantive challenges.

Although Appellants may claim to suffer injury because the School Board did not adopt the specific ABA services they were requesting, such a claim is not a cognizable injury in fact under the procedural prong of *Rowley* because the children's IEPs included an ABA-based service. Therefore, Appellants do not allege any "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'" that relates to a procedural violation under *Rowley*. *See Spokeo*, 136 S. Ct. at 1548. As such, even if the alleged School Board policy exists,[6] Appellants lack standing to challenge the policy because it was not applied to them.

Accordingly, the district court's decision is **AFFIRMED**.

---

[6] This Court makes no finding as to whether such a policy, in fact, existed.

15