IN THE UNITED STATES DISTRICT COURT FOR 
 THE MIDDLE DISTRICT OF ALABAMA 
 SOUTHERN DIVISION 

ENTERPRISE CITY BOARD ) 
OF EDUCATION, ) 
 ) 
 Plaintiff, ) 
 ) 
v. ) C a s e No. 1:19-cv-748-ALB 
 ) 
S.S. and J.S., individually and as ) 
parents, legal guardians, next ) 
friends, and legal representatives ) 
of S.S., a minor, ) 
 ) 
 Defendants. ) 
 MEMORANDUM OPINION AND ORDER 
Plaintiff Enterprise City Board of Education has petitioned the Court to review 
a Hearing Officer’s decision under the Individuals with Disabilities Education Act. 
Following a due process hearing, the Hearing Officer granted Defendant S.S.’s 
petition, brought through his parents, alleging that the Board failed to provide him a 
free appropriate public education during the 2017–2018 and 2018–2019 school 
years. The Board appealed, and the parties filed cross-motions for judgment on the 
administrative record. (Docs. 56, 58). After reviewing the record, receiving briefing, 
and with the benefit of oral argument, the Court GRANTS the parents’ motion and 
DENIES the Board’s motion. 
 BACKGROUND 
S.S. is a student under the Board’s supervision who has attended Coppinville 

Junior High School since he was twelve years old. He has been diagnosed with 
autism, pica, cerebral palsy, and Chiari malformation, which cause him to attack and 
bite people, pull their shirts and hair, walk in repetitive circles, and eat fibers off the 

carpet. He also punches himself in the face and engages in repetitive hand flapping. 
Because he attempts to run away, he wears an electronic monitoring bracelet. S.S. is 
indisputably eligible for special education services under the IDEA. 
Before attending school in the Enterprise City School District, S.S. lived in 

Florida’s Escambia County School District. To comply with IDEA requirements, 
S.S.’s school in Escambia County, Florida prepared him an individualized education 
program (“IEP”), which included a behavior intervention plan to document and 

address S.S.’s behavioral challenges. These plans enabled S.S. to make academic 
progress such as identifying his name from a list, walk with a teacher without 
running away, identify the weather, and perform a counting exercise. (Docs. 49-1 at 
9; 49-7; 49-15 at 12–13). 

This progress faltered when S.S. and his family moved to Alabama and he 
began attending school in the Enterprise City School District. S.S. first attended 
Hillcrest Elementary School in 2017–2018 and then Coppinville Junior High School 

in 2018–2019. During both school years, S.S. had an IEP. The IEPs mandated 
evaluation for each of S.S.’s goals through both data collection and teacher 
observation. Yet S.S. did not master a single one of the goals or benchmarks for 

either school year. 
The 2017–2018 IEP included goals in reading, math, science, behavior, 
language arts, and communication (Doc. 49-9 at 198–203). The IEP noted that S.S. 

could “sit and attend to activities for 5-10 minutes” with maximum prompts or 
redirection. (Doc. 49-9 at 215). His Measurable Annual Goal for behavior was, by 
the end of the school year, to remain in his seat or work area for 15 minutes with 
visual supports and minimum prompts 4 out of 5 times over a two-week period. 

(Doc. 49-9 at 215). His benchmarks in meeting this goal were to remain in his seat 
for 5 minutes with visual supports and minimum prompts 2 out of 5 times by the 
middle of the school year and for 10 minutes with visual supports and minimum 

prompts 3 out of 5 times by the middle of the second semester (Doc. 49-9 at 215). 
The 2018–2019 IEP included goals in reading, math, functional 
communication, behavior/communication, and personal management. The IEP 
noted that S.S.’s behavior/communication challenges included deficits in 

communication skills that “limit interactions with others and adversely affects 
participation and performance during academic and social activities.” (Doc 49-10 at 
6). His Measurable Annual Goal was to “reduce elopement by making an exchange 

for the bathroom and to request desired objects with a gestural prompt in 4 out of 5 
opportunities.” (Doc. 49-10 at 6). His benchmarks were to “make an exchange for 
the bathroom and desired objects with a full physical prompt in 4 out of 5 

opportunities” by the middle of the school year and to make those exchanges “with 
a partial physical prompt in 4 out of 5 opportunities” by the middle of the second 
semester. (Doc 49-10 at 6). 

Regarding S.S.’s personal management, the IEP noted that S.S. was “behind 
and functioning below grade level in all academic and social areas.” (Doc. 49-10 at 
8). His Measurable Annual Goal for personal management was to transition 
throughout the day, given visual supports, “with a calm and safe body, keeping his 

hands within his own personal space with minimal verbal or gestural cues in 4 out 
of 5 opportunities.” (Doc. 49-10 at 8). There were no benchmarks for this goal. 
The IEPs for both school years mandated the creation of Annual Goal Progress 

reports to be sent every nine weeks to his parents. (Docs. 49-9 at 211; 49-10 at 2). 
And both IEPs noted that S.S. has “behavior which impedes his learning or the 
learning of others . . . .” (Docs. 49-9 at 197; 49-10 at 2). Neither IEP included a 
behavior intervention plan. (Docs. 49-9 at 197; 49-10 at 2). S.S.’s teacher, Bianca 

Ortiz, specifically promised the parents that the IEP team would develop a behavior 
intervention plan for the child. But the Board never followed through on actually 
creating the promised plan.1 

The parents sought a due process hearing shortly after S.S.’s teacher, Ortiz, 
had to leave Coppinville Junior High School to fill in for another teacher’s medical 
emergency. About this same time, S.S. and his family moved from their home in 

Coffee County to a home within the Enterprise city limits. At the hearing, the parents 
requested that the Board use a board-certified behavior analyst to develop and 
implement a behavior intervention plan based upon peer reviewed research. The 
parents further sought to obtain a one-on-one aide for S.S. with additional 

professionals trained in behavior management as well as weekly counselling, 
accurate communication logs, a check-in and check-out system, and an 
organizational system. (Doc. 49-15 at 7). In the alternative, at the hearing, the parents 

identified a residential treatment center that might meet S.S.’s needs. (Doc. 49-15 at 
11, 19). 
During the hearing, the following additional facts were developed: 
The Enterprise school district kept logs of S.S.’s behavior that differed slightly 

from the copies sent home to S.S.’s parents. Two of S.S.’s teachers testified that no 

   
1 Although the Board did not provide a formal plan to address S.S.’s behavioral challenges, the 
Board did try to meet S.S.’s needs in other ways, including customizing a classroom at Coppinville 
Junior High School with bathing and washing facilities and special mats. The Board also limited 
his class size to only three or four students, with additional opportunities for socialization and peer 
engagement through physical education, choir, and Special Olympics. 
one documented the behavior strategies or techniques used with S.S. And the school 
district’s Special Education Director, Joylee Cain, testified that she could not point 

to any document produced by the school board to show that S.S. made progress 
during the 2017–2018 or 2018–2019 school years. 
During the 2018–2019 school year, S.S. had an aide named Zane Mitchell, but 

Mitchell was unaware of the circumstances and unprepared for the challenges of 
working with S.S. His requests for assistance went unanswered, and he resigned. 
S.S.’s behavioral challenges extended to his transportation by bus to and from 
school, and he was suspended from the bus in September 2018. The Board neither 

provided him a behavior intervention plan to get him back on the bus nor reimbursed 
his parents for mileage when they began transporting S.S. The bus situation was 
reportedly addressed in an October 25, 2018 IEP meeting, but no written 

documentation of that meeting has surfaced. 
At the hearing’s conclusion, the Hearing Officer made these rulings: 
1. The Board’s failure to provide S.S. a behavior intervention plan during the 
2017–2018 and 2018–2019 school years deprived him of a free appropriate public 

education; 
2. The Board committed a procedural violation of the IDEA by failing to 
provide S.S. a behavior intervention plan for the 2017–2018 and 2018–2019 school 

years; 
3. The Board committed a procedural violation of the IDEA by failing to 
provide S.S. both a behavior intervention plan for the bus and bus transportation for 

S.S. between September 2018 and February 2019; 
4. The Board is directed to reimburse S.S.’s parents at the U.S. Federal 
mileage rate for their mileage incurred transporting S.S. to school between 

September 2018 and February 2019. 
5. The Board committed a procedural violation of the IDEA by failing to 
document the IEP team’s decision concerning the proposal to develop, revise, or 
discuss a behavior intervention plan for S.S.; 

6. The Board is directed immediately to provide S.S. with a behavior 
intervention plan and a board-certified behavior analyst and to work with his team 
to address these concerns; 

7. The Board is directed immediately to provide S.S. a one-on-one behavioral 
aide and a counselor; and, 
8. The private residential placement is denied because it is not the least 
restrictive environment and S.S.’s unique needs can be met in the public schools. 

Now the Board seeks review and reversal of the Hearing Officer’s decision. 
 FINDINGS OF FACT AND CONCLUSIONS OF LAW 
In the administrative proceeding below, the Hearing Officer held that three of 

the Board’s procedural violations harmed S.S.: failing to create behavior 
intervention plans for the 2017–2018 and 2018–2019 school years, including for the 
bus; failing to provide S.S. bus transportation between September 2018 and February 

2019; and failing to document the IEP team’s decision whether to develop, revise, 
or discuss a behavior intervention plan. 
The parents ask the Court to adopt the Hearing Officer’s findings of fact and 

affirm her conclusions of law. The parents also request their attorney’s fees. The 
Board responds that the Hearing Officer misconstrued the IDEA and misapplied 
controlling precedent because the law does not require provision of a behavior 
intervention plan, board-certified behavior analyst, behavioral aide, or counselor. 

The Board also argues that the Hearing Officer’s evidentiary findings are faulty 
because S.S. has made appropriate and noteworthy, albeit minimal, gains under his 
IEPs, when viewed in light of his abilities. In essence, the Board argues that, 

although its goals may be meager, it is doing its best, given the circumstances. 
After extensively reviewing the record, the Court holds that the Board was 
required by law to do better—even in light of S.S.’s unique circumstances. People 
tend to rise or sink to meet expectations; the IDEA reflects Congress’s attempt to 

ensure those expectations remain high. See Bd. of Educ. of Hendrick Hudson Cent. 
Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982) (compliance with IDEA procedures 
“would in most cases assure much if not all of what Congress wished in the way of 

substantive content in an IEP”). The Board, however, did not abide by the IDEA’s 
procedures, the IEP was not reasonably calculated to enable S.S. to receive 
educational benefits, and the violations deprived S.S. of a free appropriate public 

education. The Court also holds that the Hearing Officer’s remedy was appropriate 
and that the parents are entitled to their attorney’s fees. 
 A. Legal standard. 

The IDEA allows parents and local educational agencies to seek review of an 
IEP in an impartial due process hearing. 20 U.S.C. § 1415(f)(1)(A). After the 
hearing, either party can appeal the hearing officer’s decision to a district court, 
where the court receives the administrative record, hears additional evidence, and 

grants appropriate relief based on the preponderance of the evidence. 20 U.S.C. § 
1415(i)(2)(A), (C). The party challenging the IEP bears the burden of showing the 
program was deficient. M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade Cty, 437 F.3d 

1085, 1096 n.8 (11th Cir. 2006) (citing Schaffer v. Weast, 546 U.S. 49, 62 (2005)). 
The court conducts a modified de novo review, deciding questions of law de 
novo and making its own factual findings based on the record. The court gives “due 
weight” to the hearing officer’s conclusions, being “careful not to substitute its 

judgment for that of the state educational authorities ….” L.J. ex rel. N.N.J. v. Sch. 
Bd. of Broward Cty, 927 F.3d 1203, 1210 (11th Cir. 2019) (citing R.L. v. Miami-
Dade Cty Sch. Bd., 757 F.3d 1173, 1178 (11th Cir. 2014)). But the court does not 

grant the hearing officer’s findings “blind deference.” Id. Although the court cannot 
“substitute [its] own notions of sound educational policy for those of the school 
authorities which they review,” the court can “fairly expect those authorities to be 

able to offer a cogent and responsive explanation for their decisions that shows the 
IEP is reasonably calculated to enable the child to make progress appropriate in light 
of his circumstances.” Endrew F. ex rel. Joseph F. v. Douglas Cty Sch. Dist. RE-1, 

137 S.Ct. 988, 1001–02 (2017). 
In conducting its review, the court can employ both an ex ante and an ex post 
review of the IEP: “A child’s actual educational progress (or lack thereof) can be 
evidence of the materiality of [a failure in the IEP]—but it is not dispositive.” L.J., 

927 F.3d at 1214 (citing Endrew F., 137 S.Ct. at 998) (“Rowley ‘involved a child 
whose progress plainly demonstrated that her IEP was designed to deliver more than 
adequate educational benefits’”). The IDEA, however, “cannot and does not promise 

‘any particular [educational] outcome.’ No law could do that—for any child.” 
Endrew F., 137 S.Ct. at 998 (citation omitted). 
To comply with the IDEA, states must provide a free appropriate public 
education. Parents can challenge a plan’s content, either on procedural or substantive 

grounds, or they can challenge the plan’s implementation. For a parent to succeed 
on a procedural content challenge, the parent must show that the school violated the 
IDEA’s procedures and that the violation caused substantive harm. L.M.P. ex rel. 

E.P. v. Sch. Bd. of Broward Cty, 879 F.3d 1274, 1278 (11th Cir. 2018). The court 
proceeds by asking two questions under Rowley, one procedural and the other 
substantive: “First, has the State complied with the procedures set forth in the Act? 

And second, is the individualized educational program developed through the Act’s 
procedures reasonably calculated to enable the child to receive educational 
benefits?” Id. (quoting Rowley, 458 U.S. at 206–07). The state must meet both 

Rowley prongs to comply with the IDEA. Id. 
 B. The Board violated IDEA procedures. 
Beginning under the first prong of Rowley, the Court holds that the Board has 
committed multiple procedural violations of the IDEA. L.M.P., 879 F.3d at 1278. 

These violations ranged from minor—slight discrepancies between copies of S.S.’s 
behavior logs—to severe. Here, the Board failed to consider behavior intervention 
in the classroom and on the bus, failed to provide S.S.’s parents with written notice 

of whether to change S.S.’s educational placement, and failed to follow the IDEA’s 
procedural steps to temporarily remove S.S. from the bus. See 20 U.S.C. § 
1415(b)(1) (parents must have an opportunity to examine all records relating to their 
child and “to participate in meetings with respect to the identification, evaluation, 

and educational placement of the child ….”); 20 U.S.C. § 1415(b)(3) (parents must 
be provided written notice of any proposed change or refusal to change child’s 
identification, evaluation, or educational placement); 20 U.S.C. § 1415(k) (if child’s 

behavior requires temporary removal from placement, local education agency must 
determine whether behavior was manifestation of child’s disability; if it was a 
manifestation, local education agency must provide functional behavior assessment 

and behavior intervention plan); 34 C.F.R. § 300.324(a)(2)(i) (IEP teams must 
consider behavior intervention as part of forming a proper IEP). But, under the 
second prong of Rowley, only those procedural violations causing substantive harm 

will entitle a plaintiff to relief. See L.M.P., 879 F.3d at 1278. 
 C. The IEP substantively violated the IDEA. 
Under the second Rowley prong, the Court holds that S.S.’s 2017–18 and 
2018–19 IEPs were not reasonably calculated to enable him to receive educational 

benefits. IEPs must be reasonably calculated to enable a child to make progress 
“appropriate in light of his circumstances.” Endrew F., 137 S.Ct. at 995–96, 999. 
For a disabled student in a normal classroom setting, appropriate progress would 

mean “achiev[ing] passing marks and advanc[ing] from grade to grade. Id. at 1000 
(quoting Rowley, 458 U.S. at 204). For a student unable to remain in a normal 
classroom setting, the “educational program must be appropriately ambitious in light 
of his circumstances, just as advancement from grade to grade is appropriately 

ambitious for most children in the regular classroom.” Id. 
“The goals may differ, but every child should have the chance to meet 
challenging objectives.” Id.; Endrew F. ex rel. Joseph F. v. Douglas Cty Sch. Dist. 

RE 1, 290 F. Supp. 3d 1175, 1184 (D. Colo. 2018) (mere “updates” or “minor or 
slight increases” in goals are insufficient). These “challenging objectives” are 
“markedly more demanding” than a mere de minimis test; otherwise, the child’s 

“education” would be no more than “sitting idly . . . awaiting the time when they 
were old enough to drop out.” Endrew F., 137 S.Ct. at 1001 (quoting Rowley, 458 
U.S. at 179) (internal quotation marks omitted). On the other extreme, a free 

appropriate public education’s “challenging objectives” need not “provide a child 
with a disability opportunities to achieve academic success, attain self-sufficiency, 
and contribute to society that are substantially equal to the opportunities afforded 
children without disabilities.” Id. 

Here, the Court finds that any plan that does not address S.S.’s behavioral 
challenges cannot be reasonably calculated to enable him to receive educational 
benefits. S.S.’s behaviors were and are a severe impediment to his education. The 

record shows that S.S.’s behavior escalated to the point that his aide resigned after 
the aide’s pleas for assistance went unheeded. Both the Hearing Officer and the 
Court were able to observe S.S. in-person during live proceedings, and the Court 
joins the Hearing Officer in noting that it is readily apparent that S.S. needs behavior 

intervention to make any progress at all.   
The Board argues as a bright line rule that the IDEA does not “require 
administration of a Functional Behavioral Assessment (‘FBA’) or implementation 

of a Behavior Intervention Plan (‘BIP’) unless the [local education agency] seeks to 
impose discipline for a violation of its disciplinary rules.” (Doc 59 at 18). This 
argument fails for two reasons. 

First, the argument fails as a matter of fact. As noted above, the Board 
disciplined S.S. by removing him from the bus based on his behavior and did not 
develop a behavior intervention plan. At oral argument, the Board argued its action 

was only an interim measure and not actually disciplinary in nature. But the Court is 
at a loss to describe as anything other than disciplinary the removal of a child from 
a bus after exhibiting problematic behavior. 
Second, as a legal matter, the Board’s argument misconstrues the IDEA. It is 

true, as the Board notes, that regulations promulgated under the IDEA expressly 
mandate the development of a behavior intervention plan only in certain 
circumstances, such as when discipline is imposed. See, e.g., Lessard v. Wilton 

Lyndeborough Coop. Sch. Dist., 518 F.3d 18, 25 (1st Cir. 2008) (“The IDEA only 
requires a behavioral plan when certain disciplinary actions are taken against a 
disabled child.”). Therefore, an IEP does not always require a BIP to be substantively 
adequate, even for a child with severe behavioral challenges. See, e.g., Park Hill Sch. 

Dist. v. Dass, 655 F.3d 762, 766 (8th Cir. 2011) (“The IDEA only requires that an 
IEP include … a ‘behavioral intervention plan’ in limited circumstances not present 
in this case.”); Alex R. ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. 

#221, 375 F.3d 603, 614 (7th Cir. 2004); Pottsgrove Sch. Dist. v. D.H., 2018 WL 
4368154, at *5 (E.D. Pa. 2018) (“An FBA is an option, but it is not inexorably a 
hard-and-fast requirement.”). But it is blackletter law that, when a child’s behavior 

impacts his ability to meet educational goals, a proper IEP should include a plan to 
address those behaviors. Endrew F., 290 F. Supp. 3d at 1185 (noting that school 
district’s “inability to develop a formal plan or properly address” child’s disruptive 

behaviors impacts assessment under Supreme Court’s Endrew F. standard). 
Under the IDEA, the IEP team is required to consider behavior interventions 
and strategies to address behavior that “impedes the child’s learning or that of 
others.” 34 C.F.R. § 300.324(a)(2)(i). Specific programs or strategies, however, are 

not mandated as long as the educational organization takes appropriate steps to 
address a student’s behavior. See M.W. ex rel. S.W. v. New York City Dep’t of Educ., 
725 F.3d 131, 140 (2d Cir. 2013) (holding that absence of functional behavioral 

assessment “does not render an IEP legally inadequate under the IDEA so long as 
the IEP adequately identifies a student’s behavioral impediments and implements 
strategies to address that behavior”); C.T. v. Croton-Harmon Union Free Sch. Dist., 
812 F. Supp. 2d 420, 431 (S.D.N.Y. 2011) (noting that IEP was not procedurally 

defective for failing to include functional behavior assessment because IEP did 
include “numerous strategies” to address student’s behavior). In other words, “[t]he 
adequacy of a given IEP turns on the unique circumstances of the child for whom it 

was created.” Endrew F., 137 S.Ct. at 1001. 
Here, the 2017–2018 and 2018–2019 IEPs were not reasonably calculated to 
enable S.S. to make appropriate progress in light of his circumstances. The Court 

agrees with the parents that one of the most pressing impediments to S.S.’s academic 
progress is his behavior. The IEP team is required to consider behavior interventions 
and strategies, but the record does not reflect that such considerations were ever 

made, let alone incorporated into the IEPs—despite the Board’s own 
acknowledgment that S.S.’s behavior impeded his and others’ learning. The Board’s 
failure to address S.S.’s behavioral obstacles undermines the Board’s contention that 
the IEPs were reasonably calculated to enable him to make progress appropriate in 

light of his circumstances. Endrew F., 290 F. Supp. 3d at 1184. 
The unique facts in S.S.’s case establish that, even though a behavior 
intervention plan is not always required, an IEP for S.S. that did not include a 

behavior intervention plan or its functional equivalent could not be substantively 
adequate. Endrew F. requires that the Board articulate some idea of how to address 
S.S.’s behavior. But the evidence shows S.S. was provided essentially the same plan 
year after year with neither measurable improvement nor a concrete plan to change 

his trajectory. The Board’s failure to address S.S.’s behavior is especially glaring 
because the Escambia County School District in Florida had a behavior intervention 
plan in place for S.S.,2 S.S.’s aide repeatedly expressed his concerns that S.S.’s 
behaviors were not being properly addressed, and S.S.’s teacher said she was going 

to develop a behavior intervention plan but no plan or its equivalent materialized. 
The Board’s failure to address S.S.’s behavior shows that his IEP was not reasonably 
calculated to enable him to make appropriate progress in light of his circumstances. 

See Endrew F., 290 F. Supp. 3d at 1184. 
In conducting its review, the Court’s ability to measure S.S.’s progress has 
been hindered by the Board’s failure to document any behavior interventions or 
activities, as mandated by S.S.’s IEP. But other evidence plainly establishes that the 

Board’s failure to develop and implement a behavior intervention plan has caused 
S.S. to either regress or only make minimal progress since attending Coppinville 
Junior High School. The parents testified that S.S.’s behavior grew increasingly 

worse over his first two years at Coppinville Junior High School, and the record 
supports the parents’ observation that S.S.’s aptitude and behavior have regressed 
since leaving the Escambia County School District in Florida. This evidence cuts 
against the argument that S.S. could just have been reacting negatively to a change 

in his environment. In any event, the Court concludes that S.S. and his parents have 

   
2 Although the record does not show that S.S. had a behavior intervention plan in place for his 
entire time in the Escambia County School District, the record does show that the Escambia County 
School District considered one. The same cannot be said for the Enterprise City School District at 
the time this lawsuit was commenced. Since initiation of this lawsuit, the Enterprise City School 
District’s approach has improved, as evidenced by the current 2019–20 IEP. 
met their burden to prove the IEP was not reasonably calculated to enable S.S.’s 
progress, even considering his unique circumstances. 

Education is an inherently aspirational endeavor. It is an investment in our 
children and their future. The IDEA “gives force to a congressional determination 
that all children—including those who suffer from disabilities—are entitled to 

participate in the life of this country’s public schools.” L.J., 927 F.3d at 1210. 
Accordingly, the IEP team’s goal is to see students not as they are, but as they can 
become. The Board did not meet its obligations under the IDEA and, accordingly, 
failed to provide S.S. a free appropriate public education. 

 D. The Hearing Officer’s remedy is appropriate. 
The Hearing Officer directed the Board to provide S.S. a board-certified 
behavior analyst, behavior intervention plan, behavioral aide, a counselor, and 

reimbursement for transportation mileage between September 2018 and February 
2019. The Board argues that awarding a board-certified behavior analyst, functional 
behavior assessment, and behavior intervention plan exceeded the Hearing Officer’s 
authority under the IDEA. 

The IDEA grants the court “broad discretion” to award “such relief as the 
court determines is appropriate.” 20 U.S.C. § 1415(i)(2)(c)(iii)); Draper v. Atlanta 
Indep. Sch. Sys., 518 F.3d 1275, 1284 (11th Cir. 2008) (quoting Sch. Comm. of Town 

of Burlington v. Dep’t of Educ. of Mass., 471 U.S. 359, 369 (1985)). The court’s 
award should place the child in the position he would have enjoyed but for the 
violation of the IDEA. Draper, 518 F.3d at 1289. This relief must be “appropriate” 

in light of the IDEA’s purpose: providing a free appropriate public education to 
children with disabilities. The court’s authority extends at least as far as issuing 
injunctive relief directing school officials to develop and implement an appropriate 

plan. Town of Burlington, 471 U.S. at 370. The court’s decision is properly guided 
by equitable principles, and the court is in no way limited by the remedy fashioned 
by the hearing officer. Draper, 518 F.3d at 1286–87 (affirming district court’s award 
of “supplemental services” beyond private school daily classes). 

The parents had argued, with the support of some of those working at the 
school, that S.S. should be educated at a residential facility for some period. The 
Hearing Officer disagreed and found that, although S.S.’s behavior issues were 

serious, he needed “intervention, not isolation.” (Doc. 49-15 at 38). Instead, the 
Hearing Officer ordered the Board to involve a board-certified behavior analyst to 
update the IEP and use a functional behavior assessment and behavior intervention 
plan. The parents did not appeal this portion of the Hearing Officer’s order. 

In arguing that this remedy exceeded the Hearing Officer’s authority, the 
Board confuses its violations of the IDEA with the measures taken to remedy those 
violations. To remedy the Board’s violations, the Hearing Officer appropriately used 

her broad discretionary powers under the IDEA to grant the relief she deemed 
appropriate, including a board-certified behavior analyst, functional behavior 
assessment, and behavior intervention plan. In doing so, she attempted to restore S.S. 

to the position he would have enjoyed but for the violations. The IDEA does not 
substantively require these specific tools in every situation, and the Court is not 
ruling against the Board for not providing these tools. The Court will, however, issue 

the same remedy as the Hearing Officer to ameliorate the Board’s violations of the 
IDEA. This remedy is strong medicine. And had the Board complied with its duties 
under the IDEA, such strong medicine might not have been necessary. As the saying 
goes, an ounce of prevention is worth a pound of cure. 

 E. S.S. is entitled to attorney’s fees. 
The parents argue that, as the prevailing parties, they are entitled to their 
attorney’s fees. The Board responds that the parents are not prevailing parties 

because the Hearing Officer did not award them a residential placement and instead 
awarded them a board-certified behavior analyst, behavior intervention plan, 
behavioral aide, a counselor, and mileage reimbursement. Accordingly, the Board 
argues that the parents are not entitled to their attorney’s fees. 

The IDEA permits the court to award reasonable attorney’s fees to the 
“prevailing party.” 20 U.S.C. § 1415(i)(3)(B). A plaintiff is a prevailing party if the 
relief obtained “materially alters the legal relationship between the parties by 

modifying the defendant’s behavior in a way that directly benefits the plaintiff.” 
Grinsted ex rel. Grinsted v. Houston Cty Sch. Dist., 826 F. Supp. 482, 485 (M.D. 
Ga. 1993) (quoting Farrar v. Hobby, 506 U.S. 103, 111–12 (1992)); see also L.C. 

ex rel. B.C. v. Tuscaloosa Cty Bd. of Educ., 2016 WL 1573269, at *7 (N.D. Ala. 
Apr. 19, 2016) (quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep’t of 
Health & Human Res., 532 U.S. 598, 604 (2001) (finding no material alteration of 

legal relationship where remedy against Board was merely additional training for 
staff)). 
The Hearing Officer’s remedy factors into the Court’s prevailing party 
analysis under the IDEA only to the extent it shows that the legal relationship 

between S.S. and the Board was materially altered. As a result of the Hearing 
Officer’s order, affirmed by this Court, the Board must provide S.S. with 
transportation expenses, a functional behavior assessment, a behavior intervention 

plan, a board-certified behavior analyst, and an aide and counselor. These legal 
duties exist because of this litigation, and the parents are prevailing parties under the 
IDEA. 
The Court agrees with the Hearing Officer’s observation: “S.S. has a devoted 

and caring group of educators who seem to desire to help him succe[ed], and 
enviable parents that are devoted to him. His classroom environment is extremely 
adaptive to his needs and with changes, he can thrive there.” (Doc. 49-15 at 39). 

Indeed, S.S.’s 2019–2020 IEP, which was created after S.S. brought this challenge 
before the hearing officer, shows that the parties can work together to create a plan 
responsive to S.S.’s needs. The Court trusts that they will be able to continue 

working together to meet their shared educational goal of providing S.S. a 
challenging education adapted to his needs and abilities. 
 CONCLUSION 

The Hearing Officer’s decision is AFFIRMED, the parents’ motion for 
judgment on the administrative record, (Doc. 56), is GRANTED, and the Board’s 
motion for judgment on the administrative record, (Doc. 58), is DENIED. Judgment 
will be entered in favor of S.S. in a separate document. 

DONE and ORDERED this 12th day of June 2020. 

 /s/ Andrew L. Brasher 
 ANDREW L. BRASHER 
 UNITED STATES DISTRICT JUDGE