**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 20-1834**

---

K.I.; J.I.,

                Plaintiffs - Appellants,

    v.

DURHAM PUBLIC SCHOOLS BOARD OF EDUCATION; NORTH CAROLINA STATE BOARD OF EDUCATION,

                Defendants - Appellees.

------------------------------

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

                Amicus Supporting Appellant.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge.  (1:19-cv-00857-LCB-JEP)

---

Argued:  September 16, 2022                Decided:  December 5, 2022

---

Before RICHARDSON and QUATTLEBAUM, Circuit Judges, and FLOYD, Senior Circuit Judge.

---

Affirmed by published opinion.  Judge Quattlebaum wrote the opinion in which Judge Richardson and Senior Judge Floyd joined.

---

**ARGUED:** Stacey Marlise Gahagan, GAHAGAN PARADIS, PLLC, Durham, North Carolina, for Appellants. Stephen Grayson Rawson, THARRINGTON SMITH LLP, Raleigh, North Carolina; Tiffany Y. Lucas, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Ellen Marjorie Saideman, LAW OFFICE OF ELLEN SAIDEMAN, Barrington, Rhode Island; Selene Almazan-Altobelli, COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, INC., Towson, Maryland, for Amicus Curiae.

_____

QUATTLEBAUM, Circuit Judge:

K.I., a minor who lives in Durham, North Carolina, was diagnosed with a variety of learning and psycho-social disorders. Dissatisfied with her school's response to her request for special education services, K.I. and her mother J.I. asked for and received a hearing under North Carolina's administrative procedures. Because they disagreed with the hearing decision, K.I. and J.I. tried to appeal it administratively. But their appeal was not considered because K.I. and J.I. did not follow North Carolina's rules for filing appeals.

Later, K.I. and J.I. sued in federal court under the Individuals with Disabilities Education Act (the "IDEA"). The IDEA, which helps to ensure that children with disabilities receive special education services, permits suits in federal court. But before a plaintiff can sue in federal court under the IDEA, she must first complete—or as the law phrases it, "exhaust"—her state administrative remedies.

The district court found that K.I. and J.I.'s failure to properly appeal under North Carolina's administrative rules meant that they had not exhausted their administrative remedies. So, it dismissed the federal action for lack of subject matter jurisdiction. K.I. and J.I.'s appeal of that decision requires us to address two questions about the IDEA's exhaustion requirement. First, is it jurisdictional or a claims-processing rule? Second, if the exhaustion requirement is a claims-processing rule, can federal courts second guess the way states enforce their administrative rules in excusing IDEA exhaustion?

3

I.

A.

We begin with an overview of the Individuals with Disabilities Education Act, 84 Stat. 175, as amended, 20 U.S.C. § 1400 *et seq.* The IDEA offers federal funds to states in exchange for a commitment to furnish a "free appropriate public education," more commonly known as a FAPE, to all children with certain physical or intellectual disabilities. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017). A FAPE means "special education and related services" that are (1) without charge, (2) meet the standards of the state educational agency, (3) include the appropriate level of education in the state involved and (4) are provided in conformity with an individualized education program ("IEP") as required by the IDEA. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188 (1982) (emphasis omitted).

Once educators determine that a student has a qualifying disability, teachers, school officials and parents prepare the IEP. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017). The IEP spells out the student's unique needs, details the special services to be provided as well as identifies measurable academic and functional goals. *Id.* The IEP thus becomes the primary vehicle for ensuring the student receives a FAPE. And the "[f]ailure to identify and evaluate a child suspected of having a disability constitutes a procedural violation of the IDEA that is actionable if the violation affected the child's substantive rights." *Johnson v. Charlotte-Mecklenburg Sch. Bd. of Educ.*, 20 F.4th 835, 839 (4th Cir. 2021).

4

Parents and educators do not always agree about evaluations, eligibility determinations and the contents of the IEP. The IDEA provides a parent who disagrees on these issues several procedural safeguards. First, a parent may request an independent education evaluation ("IEE"). *See* 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502. If a disagreement persists, parents may turn to dispute resolution procedures established under the IDEA—mediation or a preliminary meeting. *Endrew F.*, 580 U.S. at 391. If those efforts do not resolve the disagreements, the parties may proceed with a due process hearing and administrative proceedings. *Id.* at 391–92. And finally, a parent who pursues these administrative proceedings to their conclusion but does not prevail may sue in state or federal court. *Id.* at 392.

## B.

K.I. attended the public schools in Durham from kindergarten through sixth grade. When K.I. was in fifth grade, her mother asked Durham Public Schools Board of Education ("Durham Public Schools") to evaluate K.I.'s eligibility for services under the IDEA. In addition to services under the IDEA, students with disabilities may seek accommodations under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Section 504"). Durham Public Schools developed a plan for K.I. under Section 504 but determined she was ineligible for services under the IDEA. Disagreeing with this, K.I.'s parents requested an IEE. As part of the IEE, at the end of K.I.'s sixth grade year, independent evaluators diagnosed her with Specific Learning Disorder with impairment in reading, Autism Spectrum Disorder and Social Communication Disorder. But K.I. enrolled in a local charter school before Durham Public Schools and the parents could hold a meeting about

5

developing her IEP. Despite that move, K.I.'s family intends for K.I. to return to a public school in Durham for high school.

In addition to K.I.'s IDEA services, K.I. and J.I. were concerned about the contractual requirements Durham Public Schools imposed on the evaluators as part of the IEE process. The contract limited the evaluators' interaction with parents and prevented the evaluators from testifying as expert witnesses in the event of a due process hearing. K.I. and J.I. contended the required contract impeded the parents' ability to participate in the evaluation process. As part of a separate matter, the North Carolina State Board of Education ("State Board") determined that Durham Public Schools' practice of not providing parents a copy of the evaluator contract unless specifically requested did not comply with the IDEA and ordered corrective action by Durham Public Schools. [1] But it found that the provisions of the contracts that restricted evaluators' ability to testify as expert witnesses and limited evaluators' interactions with parents complied with the statute. And the State Board did not order Durham Public Schools to change the contract issues that were found noncompliant.

Not satisfied, K.I. and J.I. requested a due process hearing in the North Carolina Office of Administrative Hearings alleging violations of the IDEA by Durham Public Schools and the State Board. They alleged that Durham Public Schools failed to (1) find K.I. eligible for special education services, (2) properly consider and evaluate her needs,

---

[1] Separate from K.I. and J.I.'s efforts, a group of attorneys filed complaints with the North Carolina Department of Public Instruction alleging violations related to the contract restrictions and the IEE process in Durham Public Schools. J.A. 23.

(3) comply with their requests for IEEs that complied with the IDEA and (4) provide K.I. a FAPE as required by the IDEA. They also alleged that the State Board failed to adequately investigate, provide oversight and resolve other complaints against Durham Public Schools regarding IEEs.

On April 11, 2019, after a hearing, an Administrative Law Judge ("ALJ") issued a final decision. The ALJ concluded that K.I. and J.I. did not prove that Durham Public Schools failed to provide a FAPE to K.I. The ALJ also concluded the Durham Public Schools correctly determined that K.I. was not eligible for services under the IDEA and that her Section 504 plan adequately accommodated her. But the ALJ found that the IEE contract impeded K.I. and J.I.'s right to participate in the decision-making process in violation of the IDEA. The ALJ also concluded that K.I. and J.I. lacked standing as to the claims against the State Board and that they failed to prove the State Board denied K.I. a FAPE.

The ALJ's decision included a "Notice of Appeal Rights." J.A. 200. The notice provided that in accordance with N.C. Gen. Stat. § 115C-109.9, a party aggrieved by the findings and decision of the hearing officer could "**appeal the findings and decision within 30 days after receipt of notice of the decision by filing a written notice of appeal with the person designated by the State Board**" under G.S. 115C-107.2(b)(9) to receive notices." J.A. 200 (emphasis in original). From there, the State Board would appoint a review officer from a pool of approved officers to conduct an impartial review of the appealed decision.

7

On April 26, 2019, within the 30-day deadline, Durham Public Schools appealed the parts of the decision that found the IEE contracts violated the IDEA. It electronically filed its notice of appeal in the Office of Administrative Hearings and mailed a copy of the notice to the other parties and the State Board's designee, Teresa King. As a result, the State Board assigned a review officer, Joe Walters, to the appeal.

On May 10, 2019, before the deadline, K.I. and J.I. electronically filed a notice of appeal with the Office of Administrative Hearings. Ms. King and the parties were included on the certificate of service, but K.I. and J.I. did not mail a hard copy of the notice to the parties or to Ms. King. On May 14, after the deadline had passed, Ms. King contacted counsel for K.I. and J.I. informing them that while they sent the appeal notice to the Office of Administrative Hearings, they did not deliver it to her as required by North Carolina law. K.I. and J.I. subsequently provided Ms. King with an electronic copy of the notice that had been filed with the Office of Administrative Hearings and offered to provide a paper copy via mail or hand-delivery.[2] Mr. Walters notified the parties that K.I. and J.I. failed to file a timely appeal that complied with the statute and, for that reason, declined to extend the timeline.

On May 25, 2019, Mr. Walters issued a written decision addressing only the portions of the ALJ's order that Durham Public Schools appealed. Mr. Walters concluded that while K.I. and J.I. showed the IEE contract violated the IDEA, those violations did not

---

[2] K.I. and J.I. allege that Durham Public Schools joined with K.I. and J.I. in filing a joint motion for an extended timeline to the review officer asking him to recognize the appeal as timely.

deny K.I. a FAPE. He also noted that K.I. and J.I. did not timely appeal in accordance with the statute. Mr. Walters explained that K.I. and J.I. only filed an electronic appeal with the Office of Administrative Hearings, which is not authorized to accept filings on behalf of the State Board. Although he indicated he was "sympathetic to the desire of the Petitioners to submit an appeal," Mr. Walters concluded that "an appeal must conform to the clear provisions of North Carolina law" and that there was "no doubt that the Petitioners knew of the requirements in N.C.G.S. § 115C-109.9 and NC 1504-1.15." J.A. 206.

K.I. and J.I. then sued Durham Public Schools and the State Board in federal court. They asserted causes of action for violations of the IDEA and for discrimination based on K.I.'s disability under Section 504 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). And they specifically alleged that Durham Public Schools and the State Board failed to provide K.I. with a FAPE. In doing so, they challenged the review officer's failure to consider their appeal. They admitted not mailing a hard copy of the notice to Ms. King, the State Board's undisputed designee, prior to the appeals deadline. But they also alleged that by electronically filing their notice of appeal with the Office of Administrative Hearings, they exhausted all "appropriate administrative remedies and further attempts would be futile." J.A. 8. They sought a finding that Durham Public Schools and the State Board violated the IDEA, the ADA and Section 504; a declaration that K.I. was eligible for IDEA services; an injunction prohibiting the use of the IEE contract; compensatory education and related services for K.I.; reimbursement of their due process expenses; and attorneys' fees and costs.

9

In response, both Durham Public Schools and the State Board moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They claimed, among other arguments, that K.I. and J.I. failed to exhaust their state administrative remedies, depriving the district court of jurisdiction.

The district court granted the motion. It held that K.I. and J.I. did not file a written notice of appeal with the State Board's designee as required by Section 115C-109.9(a) of the North Carolina Code. As a result, it found that K.I. and J.I. failed to exhaust their state administrative process and remedies. It also found that K.I. and J.I. had not proved complying with Section 115C-109.9(a) would have been futile. Then, following our case law at the time, the district court held that it lacked subject matter jurisdiction to hear the case because IDEA exhaustion was a jurisdictional requirement. Thus, the district court dismissed the case with prejudice, including the related ADA and Section 504 claims, which it held were subject to the same exhaustion requirement.

K.I. and J.I. appeal the district court's decision and we have jurisdiction to review the district court's final decision. 20 U.S.C. § 1415(i)(3)(A); 28 U.S.C. § 1291.

II.

We review the district court's factual findings on jurisdiction for clear error and the legal conclusions de novo as we consider this appeal from a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014). Generally, "[w]hether a plaintiff has properly exhausted all administrative remedies is a pure question of law that we review de novo." *E.L. ex rel.*

10

*Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014). And in the context of the IDEA, the district court conducts a modified de novo review and, in doing so, gives due weight to the underlying administrative proceedings and deference to the state administrative agency. *Johnson*, 20 F.4th at 844. We explained in *Kirkpatrick v. Lenoir County Board of Education* that "although courts are statutorily required to conduct an independent review of the administrative record," we defer to the administrative agency in IDEA cases. 216 F.3d 380, 385 (4th Cir. 2000). That is because we recognize that "state educational administrative agencies possess a level of expertise and familiarity with educational standards and medical information regarding disabilities." *Id.*

## III.

### A.

With these standards in mind, we turn to K.I. and J.I.'s challenge to the district court's decision to dismiss their claims due to failure to exhaust the state administrative remedies.[3] As noted above, an aggrieved party under the IDEA can sue in either state or federal court. 20 U.S.C. § 1415(i)(2)(A). Even so, "[w]e have consistently held that a

---

[3] In their briefing, Durham Public Schools and the State Board of Education argue K.I. and J.I. lack standing to sue the State Board and do not present a justiciable claim against Durham Public Schools in terms of relief we could order. They also assert K.I. and J.I.'s claims about the IEE contract are moot due to changes in the IEE contract and K.I.'s enrollment outside the school system. Normally, we would need to address those issues before proceeding to the merits of any issues raised on appeal. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). But we may consider certain threshold issues, like exhaustion of remedies, before considering Article III jurisdictional issues. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007).

plaintiff must exhaust her administrative remedies before bringing such an action." *E.L.*, 773 F.3d at 513–14; *see also* 20 U.S.C. § 1415(l)("Rule of Construction"). Indeed, "the IDEA's exhaustion requirement serves the important purpose of allowing states to use their special expertise to resolve educational disputes." *E.L.*, 773 F.3d at 514. What must be done to exhaust administratively will depend on the laws and rules of each state. The IDEA allows states to choose between a one-tiered system or a two-tiered system for administrative review before claims arising under the IDEA may be pursued in state or federal court. In a one-tiered system, the "State educational agency" decides the case. 20 U.S.C. § 1415(f)(1)(A). In a two-tiered system, where the "local educational agency" initially decides the case, an appeal must be taken to the "State educational agency" to conduct an impartial review before a civil action is brought in state court or the district court of the United States. 20 U.S.C. § 1415(f)(1)(A), (g)(1).

Although it has since amended its statute to eliminate the second tier, at the time of this appeal, North Carolina had a two-tiered system. Thus, to challenge a school's failure to evaluate a child or provide a FAPE, a parent in North Carolina had to petition the North Carolina Office of Administrative Hearings[4] to obtain a due process hearing before an ALJ. *Johnson*, 20 F.4th at 839; *see also* N.C. Gen. Stat. Ann. § 115C-109.6(a), (f). Then a parent

---

[4] The Office of Administrative Hearings is an independent, quasi-judicial agency under the North Carolina constitution "established to ensure that administrative decisions are made in a fair and impartial manner to protect the due process rights of citizens who challenge administrative action and to provide a source of independent administrative law judges to conduct administrative hearings in contested cases," with the goal of preventing the "commingling of legislative, executive, and judicial functions in the administrative process." N.C. Gen. Stat. Ann. § 7A-750.

could appeal the ALJ's decision to a review officer appointed by the State Board from a pool of approved officers. N.C. Gen. Stat. Ann. § 115C-109.9(a). A party unhappy with the review officer's decision could then "institute a civil action in State court within 30 days after receipt of the notice of the decision or in federal court as provided in 20 U.S.C. § 1415." N.C. Gen. Stat. Ann. § 115C-109.9(d); *see also* 20 U.S.C. § 1415(i)(2)(A); *Johnson*, 20 F.4th at 839-40.

We recently reiterated that an action filed in federal court "is an original civil action, not an appeal from a state administrative agency." *Johnson*, 20 F.4th at 844. Our system of federalism—which recognizes both state court systems and state administrative systems as distinct from federal court systems and federal administrative systems—dictates this. *See Kirkpatrick*, 216 F.3d at 386 (noting that the principles of federalism "also apply in the administrative realm"). "Although judicial review of administrative agency action is a fixture of our modern administrative state, generally federal courts review federal agencies and state courts review state agencies." *Id.* Because the district court is one of original jurisdiction for these IDEA actions, it does not sit as an appellate tribunal to review action taken administratively in state proceedings. *Id.* And because the IDEA action is an original civil action, "Congress's authorization of a federal court action after state administrative remedies have been exhausted does not represent a departure from the long-established principles of federalism." *Id.* at 387. Instead, the IDEA's procedural scheme "reveals Congress's intent to provide aggrieved persons with an *external* check on the state administrative action." *Id.* (emphasis in original).

B.

K.I. and J.I. acknowledge the IDEA's exhaustion requirement but argue the district court erred in holding that they failed to comply with it. More specifically, they contend that by electronically filing their notice of appeal with North Carolina's Office of Administrative Hearings with a copy to the state's designee Ms. King, they satisfied N.C. Gen. Stat. Ann. § 115C-109.9(d)'s procedural requirements. The district court, however, disagreed. It concluded that the state's review officer correctly decided that the statute required notice of appeals to be filed in writing—not electronically—within 30 days of receipt of the ALJ's decision. The court then reasoned that because K.I. and J.I. did not do this, they failed to exhaust their administrative remedies. We see no error in the district court's decision.

C.

K.I. and J.I. next argue that, even if they failed to exhaust, the district court erred in holding that the IDEA's exhaustion requirement is jurisdictional in nature. Instead, they insist it is a claims-processing rule. On this point, we agree.

To be sure, our precedent is to the contrary. In *MM ex rel. DM v. School District of Greenville County*, 303 F.3d 523 (4th Cir. 2002), we held, without further analysis, that the IDEA's exhaustion requirement was jurisdictional. We noted that "[t]he failure of the Parents to exhaust their administrative remedies for [certain] school years deprives us of subject matter jurisdiction over those claims, and we agree with the district court that the claims for those years must fail." *Id.* at 536. The district court properly recognized that the Fourth Circuit treats the IDEA's exhaustion requirement as jurisdictional.

14

A three-judge panel of this Court cannot overrule the decision of another panel. *See McMellon v. United States*, 387 F.3d 329, 334 (4th Cir. 2004) (en banc) ("Accordingly, we conclude that when there is an irreconcilable conflict between opinions issued by three-judge panels of this court, the first case to decide the issue is the one that must be followed, unless and until it is overruled by this court sitting *en banc* or by the Supreme Court."); *see also Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) ("Similarly, when a panel of our Court looks horizontally to our own precedents, we must apply their commands as a mechanical mandate."). But we need not follow precedent by a panel or by the court sitting en banc if the decision rests on authority that subsequently proves untenable in light of Supreme Court decisions. *United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022). "Authority is untenable if its reasoning or holding is inconsistent with a Supreme Court decision." *Id*.; *see also United States v. Williams*, 155 F.3d 418, 421 (4th Cir. 1998) ("To the extent that our prior decision . . . requires a different result, its holding is clearly undermined by the more recent Supreme Court decisions . . . . Accordingly, we are not bound to follow it.").

So we must decide whether our precedent, which holds that the IDEA's exhaustion requirement is jurisdictional, is inconsistent with Supreme Court authority. The Supreme Court has not directly overruled our prior decision.[5] But in the two decades since our 2002

---

[5] The Court, however, has given us clues. In *Honig v. Doe*, 484 U.S. 305 (1988), the Supreme Court considered the IDEA's precursor statute and its "stay-put" provision that allowed a child to remain in his or her current placement pending the completion of review proceedings unless the parents and local educational agencies agreed otherwise. The "stay-put" provision did not have an emergency exception for dangerous students but recognized

15

*MM* decision, the Supreme Court has clearly and consistently cautioned lower courts about the overuse of the term "jurisdiction." Just a few years after *MM*, in *Kontrick v. Ryan*, 540 U.S. 443 (2004), the Supreme Court noted that courts, including the high court itself, had sometimes used the term "jurisdictional" to describe time prescriptions in court rules. *Id.* at 454. "Jurisdiction," the Court stated, "is a word of many, too many, meanings." *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998)). Then it explained that jurisdiction means more than time prescriptions; it refers to the court's adjudicatory authority to hear classes of cases which implicate that authority. *Id.* at 454–55.

A few years later, in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), the Court provided more emphatic guidance. It explained that jurisdiction refers to the power of the courts, rather than the rights and obligations of the parties. *Id.* at 160–61. And it noted that courts "have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." *Id.* at 161. But the Court explained that its "recent cases evince a marked desire to curtail such 'drive-by jurisdictional rulings,'"

---

that educators were not left without a remedy to deal with students who were endangering themselves or others. One such permissible remedy was temporarily suspending a student for up to 10 school days. *Honig*, 484 at 326. The Supreme Court noted that in that instance, "the 10–day respite gives school officials an opportunity to invoke the aid of the courts under § 1415(e)(2), which empowers courts to grant any appropriate relief." *Id.* The Court noted that while judicial review was not normally available under the statute until all administrative proceedings were completed, parents were able to "bypass the administrative process where exhaustion would be futile or inadequate." *Id.* at 327. Because the court "has no authority to create equitable exceptions to jurisdictional requirements," *Honig*'s recognition of such exceptions may speak to that requirement's nonjurisdictional nature. *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

which could miss the critical difference between "true jurisdictional conditions and nonjurisdictional limitations on causes of action." *Id.* (internal citation omitted).

*United States v. Wong*, 575 U.S. 402 (2015), provided even more clarity about the distinction. There, the Court explained that time bars that are truly jurisdictional deprive a court of all authority to hear a case. *Id.* at 408–09. That means that courts must enforce the restriction even if the other party has waived any timeliness objection and even if equitable considerations would support the extension of the prescribed time period. *Id.* at 409. Because enforcement could create harsh consequences, *Wong* instructs that courts must evaluate whether Congress expressed a clear intent that the restriction is jurisdictional. *Id.* at 409–10. The Court explained that "traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." *Id.* at 410. It instructed that, absent such a clear statement, a time limit is not jurisdictional, even if expressed in mandatory and emphatic terms. *Id.*

And recently, in *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019), the Supreme Court addressed this issue in the context of a federal statutory scheme's administrative exhaustion requirement. There, the Court unanimously held that Title VII of the Civil Rights Act of 1964's requirement that a charge be filed with the Equal Employment Opportunity Commission before filing suit in court was a procedural requirement rather than a jurisdictional one. *Id.* at 1846. The Court emphasized that the exhaustion requirement involved the party's procedural obligations rather than the court's authority. The Court explained that a claims-processing rule could be "mandatory" in the sense that

17

a court must enforce the rule if properly raised. *Id.* at 1849. But it could also be forfeited by a party if not timely raised. *Id.*[6]

To follow this Supreme Court guidance, we must examine the text of the IDEA's exhaustion provisions to see if they reveal a clear jurisdictional intent. The IDEA's most prominent exhaustion provision, 20 U.S.C. § 1415(l), provides that exhaustion of the IDEA's administrative procedures is required before the filing of a civil action when a plaintiff is seeking relief that is available under the IDEA, even if a plaintiff is bringing suit under the ADA, the Rehabilitation Act or similar laws. But it does not mention jurisdiction. And 20 U.S.C. § 1415(i)(2)(A), which establishes the right of an aggrieved party to bring a civil action "in any State court of competent jurisdiction or in a district Court of the United States," does not contain language expressly stating that it limits the power of the courts to hear the matter. Thus, the text of the IDEA does not signal a clear congressional intent to limit the jurisdiction of the courts. For those reasons, *MM*'s reasoning is inconsistent with more recent Supreme Court authority. Accordingly, we

---

[6] In *Stewart v. Iancu*, 912 F.3d 693 (4th Cir. 2019), we acknowledged the impact of *Fort Bend* and more recent Supreme Court decisions. In that case, we held that a 180-day waiting period for filing a civil action under Title VII, imposed when a federal employee brings suit against an employer after filing an initial administrative charge, was a claims-processing rule. In so doing, we reversed the district court's dismissal of the claim for lack of subject matter jurisdiction because the employee failed to exhaust his administrative remedies. We acknowledged there that "[n]ot all exhaustion requirements are jurisdictional." *Id.* at 700. "Rather, whether a particular exhaustion requirement—in Title VII or any other statute—is jurisdictional turns on the statutory language and purpose of the exhaustion provision at issue." *Id.* at 701; *see also Naturaland Tr. v. Dakota Fin. LLC*, 41 F.4th 342, 346–47 (4th Cir. 2022).

decline to follow it here.[7] Instead, we hold the IDEA's exhaustion requirement is not a

jurisdictional requirement but a claims-processing rule.

D.

But does our determination that the IDEA's exhaustion requirement is a claims-

processing rule and not a jurisdictional one make any difference in this case? Durham

Public Schools and the State Board insist it does not, pointing out that the distinction

between jurisdictional rules and claims-processing rules typically relates to the issues of

waiver and forfeiture. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13,

17 (2017) (a "jurisdictional defect is not subject to waiver or forfeiture and may be raised

at any time in the court of first instance and on direct appeal."). As Durham Public Schools

and the State Board note, neither waiver nor forfeiture applies here. After all, in challenging

---

[7] We recognize there is no consensus from our sister circuits on this issue. As the Tenth Circuit noted, other circuits have split on whether IDEA exhaustion is jurisdictional. *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784 (10th Cir. 2013). Our Circuit and the Second Circuit initially proceeded on the idea that exhaustion is jurisdictional, but even the Second Circuit has questioned that line of reasoning. *See Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530, n.44 (2d Cir. 2020) (recognizing more recent Supreme Court precedent but not deciding whether the decision, which labeled the IDEA's exhaustion requirement a rule affecting subject matter jurisdiction, remained good law because there was no claim of waiver or forfeiture). Other courts have also held they need not reach the issue. *See e.g.*, *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 593 n.2 (8th Cir. 2013) (noting that because the district had not waived the exhaustion requirement, it did not need to rule on whether the IDEA's exhaustion requirement is jurisdictional). And still other circuit courts have treated the IDEA exhaustion requirement as a waivable, claims-processing rule. *See Mosely v. Bd. of Educ.*, 434 F.3d 527, 533 (7th Cir. 2006) ("A failure to exhaust is normally considered to be an affirmative defense … and we see no reason to treat it differently here."); *N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (per curiam) ("The exhaustion requirement . . . is not jurisdictional . . . .").

K.I. and J.I.'s failure to exhaust administrative remedies, they raised the IDEA exhaustion requirement before the district court and continued to advance that argument here on appeal.

K.I. and J.I. insist, however, that our determination that the exhaustion requirement is a claims-processing rule matters for a different reason. According to K.I. and J.I., courts may fashion equitable remedies for violations of claims-processing rules. In advancing this argument, they point to the district court's decision. As K.I. and J.I. note, the district court stated that "[b]ecause the Fourth Circuit treats the IDEA's exhaustion requirement as jurisdictional, the Court lacks the authority to fashion an equitable exception to North Carolina's procedure." J.A. 243. Seizing on this language, they contend equity supports their position. K.I. and J.I. point out that while they may not have filed their appeal in writing to Ms. King, they filed it on time to the Office of Administrative Hearings and Ms. King received it. Under those circumstances, they argue it would be inequitable to strictly enforce the requirements of North Carolina law.

The problem with K.I. and J.I.'s argument, however, is that they have not raised any equitable arguments that apply here. Below they argued that exhausting their administrative remedies was futile because of the inherent bias of the State Board and the inability of the review officer to mandate relief on the contracts. And it is correct that futility is an exception to the IDEA's exhaustion requirement. *MM*, 303 F.3d at 536. But

20

the district court held K.I. and J.I. did not meet their burden on this futility exception.[8]

Despite that, on appeal, K.I. and J.I. did not raise this issue in their opening brief. It is mentioned in their reply brief, only in passing, without any substantive argument, where they invite us to consider the futility of their exhaustion efforts. For this reason, they waived the issue. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

K.I. and J.I. also argue that their filings to North Carolina's Office of Administrative Hearings constitute the "functional equivalent" of North Carolina's filing requirements. But the authority K.I. and J.I. cite does not convince us that the functional equivalent doctrine applies here. True, federal courts have recognized that in some cases, functionally equivalent conduct can satisfy the technical requirements of federal procedural rules. *See e.g.*, *Smith v. Barry*, 502 U.S. 244 (1992) (holding that a document intended to serve as an appellate brief could qualify as the notice of appeal required by Rule 3 of the Federal Rules of Appellate Procedure if it was filed within the time specified by Rule 4 for a notice of

---

[8] Even though the district court determined it lacked subject matter jurisdiction, the court properly recognized that we have identified three narrow exceptions to the administrative exhaustion requirement. Exhaustion is not required (1) where the administrative process would be futile; (2) when the parents do not receive the proposed notice of their administrative rights; or (3) where exhaustion would be harmful to the child. *MM*, 303 F.3d at 536. Before the district court, K.I. and J.I. only argued that the first exception to the exhaustion requirement applied—that they were not required to appeal to the review officer because such an appeal would have been futile due to the inherent bias of the State Board and because of the ALJ and review officer's inability to mandate relief on the IEE contract claim. But the district court concluded that K.I. and J.I., who bore the burden of establishing the exception, failed to do so, finding no inherent bias or inability of the administrative process to provide relief.

appeal because it served as a functional equivalent of the requirement). But neither those decisions, nor any authority we are aware of, provides us the authority to overrule North Carolina's application of its state procedural rules. Indeed, our precedent suggests the opposite: "[W]hile a federal district court may review a state review officer's decision and even defer to that decision," we do not have the "power to sit as appellate tribunals over state court or administrative proceedings . . . . Federal district courts cannot directly supervise and supplant state administrative action by affirming, reversing, or modifying administrative decisions." *Kirkpatrick*, 216 F.3d at 387.

Important principles of federalism are at stake here. Perhaps Mr. Walters' strict adherence to North Carolina's procedural rules was a bit too ticky-tack. But even if that is correct, we cannot overturn a state agency's interpretation of its rules just because we might have handled things differently. In sum, despite our conclusion that the IDEA's exhaustion requirement is a claims-processing rule, K.I. and J.I. have not identified any equitable principles that permit us to meddle in a state's interpretation of its laws.

E.

Finally, we must address K.I. and J.I.'s ADA and Section 504 claims. Of note, 20 U.S.C. § 1415(l) provides that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and

22

> (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

In *Fry*, the Supreme Court explained that if the complaint seeks relief for the denial of a FAPE, § 1415(l)'s exhaustion applies to related ADA and Section 504 claims. *Fry*, 580 U.S. at 168 ("For that reason, § 1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a FAPE . . . . If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA"). Further, "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.* at 173–74.

The district court concluded that K.I. and J.I.'s ADA and Section 504 claims stem from the IEE contract in the same manner the IDEA claim does. For this reason, it found that the essence of the ADA and Section 504 claims involved the denial of a FAPE. Accordingly, the district court held that the IDEA's exhaustion requirements applied to those claims as well. It also noted that K.I. and J.I. did not claim otherwise below. Thus, the court dismissed the ADA and Section 504 claims.

We agree on both counts. First, because K.I. and J.I. did not challenge the court's ruling on the ADA and Section 504 claims, the issue is waived. *See Maryland Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 367 (4th Cir. 2020). Further, we find the district court correctly analyzed these claims. Both the ADA and Section 504 claims sought relief due to the alleged failure of Durham Public Schools and the State Board to provide a FAPE to

23

K.I. Thus, under *Fry*, the IDEA's exhaustion requirement applied to those claims. And because we find K.I. and J.I.'s failure to exhaust fatal to their IDEA action in federal court, we also affirm the district court in dismissing the ADA and Section 504 claims.

IV.

For the reasons stated above, we affirm the district court in dismissing the action against Durham Public Schools and the State Board. *Ostrzenski v. Seigel*, 177 F.3d 245, 253 (4th Cir. 1999) ("[W]e may affirm the dismissal by the district court on the basis of any ground supported by the record even if it is not the basis relied upon by the district court.").

*AFFIRMED*