**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1819**

STEPHANIE JOHNSON, individually and on behalf of A.J.; STEPHANIE JOHNSON, individually and on behalf of T.S.,

Plaintiffs - Appellants,

v.

CHARLOTTE-MECKLENBURG SCHOOLS BOARD OF EDUCATION; CHARLOTTE-MECKLENBURG COUNTY BOARD OF EDUCATION,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:19−cv−00244−MOC−DSC)

Argued: September 23, 2021                     Decided: December 20, 2021

Before RICHARDSON and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Keenan wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

**ARGUED:** Andrew Kiernan Cuddy, CUDDY LAW FIRM PLLC, Auburn, New York, for Appellants. Christopher Zemp Campbell, Kristopher Lee Caudle, CAMPBELL SHATLEY, PLLC, Asheville, North Carolina, for Appellees. **ON BRIEF:** J. Melissa Woods, CHARLOTTE-MECKLENBURG SCHOOLS, Charlotte, North Carolina, for Appellees.

BARBARA MILANO KEENAN, Senior Circuit Judge:

Plaintiff Stephanie Johnson is the mother of two students, A.J. and T.S., who formerly attended a public school operated by the Charlotte-Mecklenburg Schools Board of Education (CMS, or the school district) in North Carolina. Johnson filed administrative complaints with the North Carolina Office of Administrative Hearings, claiming that the school district had violated her daughters' rights under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* Johnson sought several remedies in the administrative process, including (1) special education services, and (2) the "backward-looking" remedy of "compensatory education" to compensate for the alleged prior deficiencies in her daughters' education.

After failing to obtain relief from the administrative agency, Johnson filed a civil action in federal district court and later withdrew her daughters from the CMS system. Observing that Johnson's complaint did not contain a request for compensatory education, the district court dismissed the case as moot because the children no longer were enrolled in a school operated by CMS. Johnson appealed from the district court's judgment.

Upon our review, we agree with the district court and hold that Johnson's withdrawal of the children from the CMS system rendered moot her request for prospective relief. Moreover, because district court proceedings under the IDEA are original civil actions, we hold that Johnson's failure to specify in her complaint that she was seeking compensatory education for her children, or to include allegations from which a request for compensatory education reasonably could be inferred, precludes her present assertion of a

2

live controversy in the district court. We therefore affirm the district court's dismissal of the complaint as moot.

## I.

The IDEA "establishes a substantive right to a 'free appropriate public education' [FAPE] for certain children with disabilities" in exchange for a state receiving federal funds to provide such education. *Endrew F. v. Douglas Cnty. Sch. Dist.*, 137 S. Ct. 988, 993 (2017). This statutory right to a FAPE ensures "meaningful access to education based on [the student's] individual needs," and includes "both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748-49, 753-54 (2017) (citations and internal quotation marks omitted). In addition to the substantive right to a FAPE, the IDEA grants certain procedural rights to parents[1] of a child with a disability, including obtaining an independent educational evaluation of their child. 20 U.S.C. § 1415(b).

A parent may request that her child be evaluated to determine whether the student qualifies as a "child with a disability" within the meaning of the IDEA. 20 U.S.C. §§ 1401(3), 1414(a)(1)(B). After receiving such a request, the state or local educational

---

[1] The IDEA defines a "parent" to include guardians as well as other persons who are "legally responsible for the child's welfare." 20 U.S.C. § 1401(23). For simplicity, we refer throughout this opinion to "parents."

3

agency[2] typically must conduct an initial evaluation within 60 days. *Id.* § 1414(a)(1)(A), (C)(i), (D)(i)(1).

Once a student is deemed eligible, a team consisting of the student's parent, teachers, and other school officials (IEP team) convenes to develop an "individualized education program," or IEP, for the child. *Fry*, 137 S. Ct. at 749; 20 U.S.C. §§ 1401(3), 1414(b)(4), (d). The IEP ensures that eligible students receive a FAPE, and sets forth the student's current academic skills, her annual goals, and the "special education and related services"[3] to which she is entitled. *Fry*, 137 S. Ct. at 748-49 (citation omitted). Failure to identify and evaluate a child suspected of having a disability constitutes a procedural violation of the IDEA that is actionable if the violation affected the child's substantive rights. *T.B., Jr. v. Prince George's Cnty. Bd. of Educ.*, 897 F.3d 566, 571 (4th Cir. 2018).

To challenge a school's failure to evaluate a child or to provide a FAPE, a parent in North Carolina may file a formal complaint with the North Carolina Office of Administrative Hearings (the state agency) and receive a "due process hearing" before an

---

[2] Under the IDEA, a "local educational agency" is "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State . . . . " 20 U.S.C. § 1401(19)(A). CMS qualifies as a local educational agency, and therefore is charged with fulfilling the state's obligations under the IDEA for students in CMS's jurisdiction. *See* 20 U.S.C. §§ 1413(a), 1414.

[3] "Special education" is "specially designed instruction to meet the unique needs of a child with a disability," whereas "related services" are "the support services required to assist a child to benefit from that instruction." *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. § 1401(26), (29)) (alterations and internal quotation marks omitted). "Related services" might include, for example, speech-language pathology and audiology services, psychological services, or physical or occupational therapy. 20 U.S.C. § 1401(26)(A).

administrative law judge (ALJ). 20 U.S.C. § 1415; N.C. Gen. Stat. § 115C-109.6(a), (f). A parent may appeal the decision of the ALJ to a Review Officer appointed by the State Board of Education. N.C. Gen. Stat. § 115C-109.9(a). If unsuccessful in this administrative process, the parent may file a civil action in state or federal court "with respect to the complaint presented" under the IDEA. 20 U.S.C. § 1415(i)(2)(A).

Federal district courts are authorized to award a broad range of remedies and to "grant such relief as the court determines is appropriate" when a school has denied a student a FAPE. 20 U.S.C. § 1415(i)(2)(C)(iii). Available relief includes the discretionary remedy of compensatory education, which is intended to remedy an "educational deficit" caused by a school's prior failure to provide a FAPE to a disabled student. *G v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003). Such relief can be ordered prospectively to compensate for a prior deficiency in the provision of services. *Id.* at 308-09. Compensatory education includes provision of educational services necessary to compensate for the education that a child should have received.[4] *See D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 496 (3d Cir. 2012) (describing compensatory education as "those educational services that a special needs student ought to have received

---

[4] Under certain circumstances, parents may be entitled to reimbursement for out-of-pocket expenses they paid as a result of a school district's failure to provide a FAPE. *See Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985) (reimbursement for private school tuition); *M.S. v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 325 (4th Cir. 2009) (explaining the conditions under which reimbursement is available). Although Johnson sought reimbursement in the administrative proceedings, on appeal she does not claim that she is entitled to reimbursement as a remedy. We therefore limit our analysis to the question whether Johnson adequately pleaded a request for compensatory education in her federal complaint.

during the period of time that FAPE was not provided" (citation omitted)); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (explaining that compensatory education may include "special programs to make up for prior deficiencies").

## II.

With this background in mind, we turn to the facts underlying the present case. The older of Johnson's two children, A.J., was in fifth grade during the 2017-18 school year. A.J. previously had been diagnosed with autism spectrum disorder and certain other disabilities, and had received special education and related services pursuant to an IEP.

In May 2018, A.J.'s IEP team, including Johnson, convened a meeting and decided to reduce the amount of services offered to A.J. during the following school year, a decision with which Johnson disagreed (the May 2018 IEP). In August 2018, Johnson requested independent educational evaluations for A.J., and, shortly thereafter, filed a "petition for a contested case hearing" before the state agency. Among other allegations, Johnson asserted that the district had denied A.J. a FAPE by failing to articulate appropriate speech goals, failing to provide for adequate speech services in the May 2018 IEP, and failing to respond to Johnson's request for independent evaluations. Johnson also challenged the adequacy of the education A.J. had received under earlier IEPs. As relief, Johnson sought a new IEP for A.J., funding for an independent psychological evaluation, and "[a]ny other remedy that the [ALJ] deem[ed] appropriate to remedy CMS's denial" of a FAPE.

6

A few months after the administrative petition was filed, the IEP team held a new IEP meeting for A.J., which Johnson attended. The team agreed to continue providing special education services for A.J. and to conduct new evaluations. Johnson agreed to the new evaluations, and a new IEP was adopted, effective November 7, 2018 (the November 2018 IEP).

The administrative proceedings continued, and the ALJ granted summary judgment to the school district on A.J.'s petition, concluding that Johnson had not supported her claims with sufficient evidence. The ALJ also held that the implementation of the November 2018 IEP "altered the legal relationship between [the parties] and there is no current legal controversy which has the capability of repeating while evading review." The ALJ thus held that A.J.'s claims were moot.[5] On appeal, the State Hearing Review Officer affirmed the ALJ's decision.

Johnson's case involving her younger daughter, T.S., followed a different course. Despite having been diagnosed with attention deficit hyperactivity disorder and other conditions, T.S. has not been identified as a "child with a disability" under the IDEA. However, during the 2017-18 school year when T.S. was in third grade, the school district provided her with a "Section 504 plan" (the 504 plan) under Section 504 of the Rehabilitation Act.[6] The 504 plan required that T.S. be placed in "small-group settings for

---

[5] The ALJ also held that A.J.'s claims arising before August 2017, as well as the claim requesting independent educational evaluations, were time-barred.

[6] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his

7

tests," be given preferential seating assignments, and be provided with extra study materials.

Johnson asserts that, in March 2018, she verbally requested that school officials evaluate T.S. for eligibility for special education services. About two months later, Johnson restated this request in writing. On the same day that the school district received Johnson's written request, school officials scheduled a meeting, which Johnson did not attend. The school officials determined that T.S. was performing adequately under her 504 plan and did not require special education services. In August 2018, Johnson requested independent educational evaluations for T.S., which the school did not provide. Less than two weeks later, Johnson filed a petition before the state agency alleging that the district had denied T.S. a FAPE, as mandated by the IDEA. Among other remedies, Johnson sought "[c]ompensatory education," including individual instruction in certain subjects.

As in A.J.'s case, school officials convened a meeting for T.S. in November 2018, which Johnson attended. The officials determined that T.S. should be formally evaluated to determine her eligibility for special education services. Nearly a month later, Johnson returned the necessary form consenting to the evaluations, but she failed to provide certain other documentation required to conduct an evaluation of T.S.

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . " 29 U.S.C. § 794(a). Accordingly, the Rehabilitation Act requires that public schools provide reasonable accommodations to students with disabilities, but does not establish the right to "individually tailored educational services" as mandated by the IDEA. *Fry*, 137 S. Ct. at 749-50, 756. The Rehabilitation Act also contains its own definition of "disability," which is broader than that used in the IDEA. *See* 29 U.S.C. § 705(9), (20); *CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 529 (7th Cir. 2014).

In the administrative proceedings, the ALJ granted the school district's motion for summary judgment on the claims related to T.S. The ALJ concluded that Johnson had not proffered sufficient evidence to support her claims and that, regardless, the parties had agreed to evaluate T.S. Accordingly, as in A.J.'s case, the ALJ held that the parties had "voluntarily altered the legal relationship between them," that there was no remaining controversy, and that all the claims were moot. The State Hearing Review Officer affirmed the decision of the ALJ in part, but reversed and remanded the case to the ALJ to consider whether the school district erroneously had failed to identify T.S. as a child with a disability and had failed to create an appropriate IEP.

Johnson later filed separate federal complaints in the district court regarding each child, which complaints the court consolidated.[7] Johnson alleged under the IDEA that the school district had denied both children a FAPE. With respect to A.J., Johnson primarily challenged the adequacy of the May 2018 IEP and earlier IEPs, particularly the provisions of the May 2018 IEP relating to speech services and the school district's failure to comply with her request for independent educational evaluations. Regarding T.S., Johnson similarly raised a challenge about the need for independent educational evaluations. In both complaints, Johnson sought to "annul" the administrative decisions, to obtain a remand to the ALJ for an evidentiary hearing, and to receive other "just and proper" relief.

---

[7] Although Johnson filed separate complaints in the district court for A.J. and T.S., we refer to the two documents in the singular, as both complaints sought the same relief from the district court.

9

While the district court proceedings were pending, Johnson withdrew both children from the school district and enrolled them in a public school in a different North Carolina school district. CMS thereafter filed a motion to dismiss for lack of subject matter jurisdiction, which the district court granted. The court reasoned that because Johnson had not sought compensatory relief from CMS, the children's enrollment in a different school district rendered moot their claims against CMS.

## III.

On appeal, Johnson contends that the district court erred in dismissing her complaint as moot. She argues that although her children no longer are enrolled in the CMS system, she still is entitled to relief in the form of compensatory education based on CMS's previous failure to provide the children their substantive right to a FAPE. Johnson concedes that she did not explicitly request compensatory education in her federal complaint, but nevertheless asserts that she preserved her right to seek compensatory education by seeking a remand to the state agency. In Johnson's view, her request for compensatory education before the agency, but not in the district court, was sufficient to establish federal subject matter jurisdiction in the district court. We disagree with Johnson's position.

### A.

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversies." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (citations, internal quotation marks, and alteration

10

omitted). Federal courts are prohibited from issuing advisory opinions and from deciding issues that will not affect the rights of the parties to the case. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). Thus, federal courts lack jurisdiction when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 336 (4th Cir. 2021) (en banc) (citation omitted). If a change in the law or facts "makes it impossible for a court to grant effective relief to a prevailing party," the case is moot and must be dismissed. *Int'l Bhd. of Teamsters v. Airgas, Inc.*, 885 F.3d 230, 235 (4th Cir. 2018).

As an initial matter, we observe that Johnson does not dispute that her request for prospective relief from CMS is moot. When a plaintiff seeks only prospective, injunctive relief, a case is moot "once the threat of the act sought to be enjoined dissipates." *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 596 (7th Cir. 2006); *see also Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 17 (1st Cir. 2003) ("In a suit seeking only injunctive relief, . . . once the act sought to be enjoined occurs, the suit must be dismissed as moot."). Here, the district court could not order CMS to provide A.J. or T.S. with future evaluations or services, because the students no longer attend CMS schools. Any order granting relief for future evaluations or services would have to be directed to the children's current school district, which is not a defendant in this case. We therefore agree with the district court's conclusion that all Johnson's claims for prospective relief against CMS are moot.

We next consider whether a claim for compensatory education is rendered moot because a student has left the defendant school district. As stated above, compensatory

11

education is an equitable remedy addressing a school district's past failure to provide a FAPE that encompasses a broad array of potential remedies. *See G*, 343 F.3d at 308; *Brown*, 442 F.3d at 596-98; *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1085 (8th Cir. 2020). A claim for compensatory education "begins to accrue when [the student's] IEP is so inappropriate that the child is receiving no real educational benefit." *Me. Sch. Admin. Dist. No. 35*, 321 F.3d at 18.

Based on the "backward-looking" character of compensatory education, we agree with several of our sister circuits, which have held that a claim for compensatory education is not rendered moot simply because the student has left the defendant school district.[8] *Somberg v. Utica Cmty. Schs.*, 908 F.3d 162, 171-72 (6th Cir. 2018); *D.F.*, 694 F.3d at 498; *Indep. Sch. Dist. No. 284 v. A.C.*, 258 F.3d 769, 774-75 (8th Cir. 2001); *cf. Garcia v. Bd. of Educ. of Albuquerque Pub. Schs.*, 520 F.3d 1116, 1124 (10th Cir. 2008) (explaining that "even if a student is ineligible going forward under IDEA, seeking backward-looking relief to make up for past deprivations" renders a claim live); *Me. Sch. Admin. Dist. No. 35*, 321 F.3d at 18 ("The presence of an actionable claim for compensatory education will insulate an IDEA case against a mootness challenge even after the child's eligibility for special education services ends."); *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 890 (9th Cir. 1995) (same). We agree with this view, which holds a school district accountable when its school's failure to comply with the IDEA has caused a student to withdraw from that school and to enroll in another school district.

---

[8] In an unpublished opinion, *Z.G. v. Pamlico Cnty. Pub. Schs. Bd. of Educ.*, 744 F. App'x 769, 778 n.15 (4th Cir. 2018), a panel of this Court reached the same conclusion.

No parent should be compelled to keep her child in a school that continually has violated the child's IDEA rights in order to safeguard a future claim for compensatory education. *Cf. Burlington*, 471 U.S. at 372 (authorizing tuition reimbursement, because a contrary rule would force parents to acquiesce to an inappropriate public placement or forgo reimbursement). Such a result plainly would be at odds with the IDEA's purpose of providing equal educational opportunities to students with disabilities. *Id.* We thus agree with the Third Circuit's reasoning that "a school district no longer responsible for educating a child must still be held responsible for its past transgressions," to avoid "creat[ing] an enormous loophole" in the IDEA and weakening the law's protections. *D.F.*, 694 F.3d at 497-98. For these reasons, we hold that a claim for compensatory education is not rendered moot simply because a student has departed from the defendant school district.

## B.

We are left with the question, however, whether Johnson's federal complaint was sufficiently broad to include a request for compensatory education. Initially, we observe that Johnson did not specifically seek any form of compensatory education in her federal complaint. Johnson argues, however, that her complaint is not rendered moot by the absence of such a request. Instead, she maintains that her claim for compensatory education in the state administrative proceedings, combined with her request in her federal complaint that her case be remanded to the state agency, are sufficient to preserve a live controversy in the district court. We disagree.

Our conclusion is compelled by fundamental principles regarding the nature of IDEA actions and federal pleading requirements. The major flaw in Johnson's position is

13

her reliance on a request made solely in the state administrative proceedings[9] to establish subject matter jurisdiction in federal court. An action filed in federal district court under the IDEA, however, is an original civil action, not an appeal from a state administrative agency. *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 382, 387 (4th Cir. 2000); *see also* 20 U.S.C. § 1415(i)(2)(A). District courts "conduct a modified de novo review, giving due weight to the underlying administrative proceedings," but are empowered to receive and consider evidence outside the administrative record. *R.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 244 (4th Cir. 2019) (citation and internal quotation marks omitted); 20 U.S.C. § 1415(i)(2)(C)(ii). As we explained in our decision in *Kirkpatrick*,

> a district court does not simply affirm, reverse, or vacate the decision of the state administrative agency. Instead, it offers its own independent *de novo* review and conclusion. If the district court fashions a different remedy, that remedy is imposed by the district court itself as an enforceable order.

216 F.3d at 384.

Federal pleading standards are applicable to claims filed under the IDEA in federal court. The plaintiff is the "master of [her] complaint and determines [which] claims to bring." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 728 (4th Cir. 2021) (citation, internal quotation marks, and alteration omitted). Thus, in the present case, it was Johnson's choice as plaintiff whether to seek compensatory education as a remedy in

---

[9] The parties dispute whether Johnson properly requested compensatory education for A.J. in the administrative proceedings. However, we need not resolve this dispute, because we conclude that Johnson abandoned any claim for compensatory education in the district court by failing to raise it in her federal complaint.

14

federal court, and whether to abandon any claims made before the state agency that she no longer wished to pursue. *See Brown*, 442 F.3d at 598.

Johnson was obligated to alert the district court to the relief she was seeking that could be awarded under the IDEA. As the Seventh Circuit has explained, a plaintiff's failure to request compensatory education in her federal complaint "deprive[s] the district court of an opportunity to exercise [its] discretion" to order such relief. *Id.* We will not require a district court to intuit what relief a plaintiff seeks, particularly when, as here, the plaintiff has been represented by counsel throughout the administrative and district court proceedings.[10] We therefore hold that a plaintiff ordinarily must include in her federal complaint a request for compensatory education to avoid dismissal for mootness when the student no longer is enrolled in the defendant school system. *See id.*; *Moseley v. Bd. of Educ. of Albuquerque Pub. Schs.*, 483 F.3d 689, 694 (10th Cir. 2007); *cf. Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 90 (2d Cir. 2005) (IDEA case was moot when federal complaint was "bereft of any prayer for compensatory education relief" and "fail[ed] to make any mention whatsoever of [the student's] need for compensatory education"); *Lauren C. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 373 n.7 (5th Cir. 2018) (claims for denial of FAPE and identification obligations moot when plaintiff sought compensatory education before the agency but "did not renew those requests in her federal lawsuit").

---

[10] We also note that Johnson never sought to amend her federal complaint to add a claim for compensatory education.

15

Although we are sympathetic to Johnson's desire to obtain a quality education for her children, we cannot read into her complaint a remedy that she never sought from the district court. While Johnson claimed that A.J. was "unable to make appropriate progress" in the prior school year, and that T.S. was "not achieving on grade level in English and Math," we cannot infer from these and other similarly general statements that Johnson was asking the district court to award the "exceptional" relief of compensatory education, rather than the provision of a FAPE as guaranteed by the IDEA. *See Brown*, 442 F.3d at 597-98 (explaining that compensatory education is an "exceptional" remedy within the "range of equitable remedies" that the district court may order (citations omitted)); *see also Reid*, 401 F.3d at 523 (remedies available under the IDEA include "prospective correction of a deficient IEP"). Instead, "[t]he tenor of the entire complaint" is for prospective relief. *Moseley*, 483 F.3d at 694. Accordingly, based on our review of the facts alleged by Johnson, we hold that a request for compensatory education "cannot be inferred from the language of [her] complaint." *Brown*, 442 F.3d at 598.

Our conclusion is not altered by Johnson's contention that she preserved her claim for compensatory education by requesting in her federal complaint a remand to the state agency. In rejecting this position, we return to the federalism principles underlying our decision in *Kirkpatrick.* There, we reiterated the long-established rule that lower federal courts "cannot directly supervise and supplant state administrative action." 216 F.3d at 387.

The limited, original jurisdiction of federal district courts in IDEA cases does not extend to appellate review of state administrative IDEA complaints. *See id.* at 386

16

(explaining that our system of federalism does not permit "cross-system appeals from state courts to federal courts"). As discussed above, district courts cannot "affirm, reverse, or vacate the decision of the state administrative agency." *Id.* at 384. And, while we did not explicitly address the issue of remand in *Kirkpatrick*, we cited approvingly the Third Circuit's observation that "[r]ather than affirming, reversing *or remanding* an agency decision, [district] courts are required to decide upon an educational placement which conforms to their understanding of the aims and terms of the [IDEA]." *Id.* at 387 (quoting *Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d 443, 451 (3d Cir. 1981)) (emphasis added). We agree with the Third Circuit in this regard and hold that, based on the principles expressed in *Kirkpatrick*, district courts cannot "remand" an IDEA case to a state agency.[11]

We therefore return to the question presented in this case, namely, whether a state administrative agency's ability to order compensatory education, based on a claim made exclusively to the state agency, can establish a live controversy in federal court. The answer to this question is no. The existence of a live controversy in the federal forum is predicated on the contents of the federal complaint, not on previous requests made

---

[11] Following our decision in *Kirkpatrick*, we occasionally have directed district courts to remand an IDEA case to a state agency. *See, e.g.*, *JH v. Henrico Cnty. Sch. Bd.*, 326 F.3d 560, 569 (4th Cir. 2003); *J.P. v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 262 n.3 (4th Cir. 2008). In those cases, however, we were not presented with the question before us here, namely, whether our decision in *Kirkpatrick* permits us to order such a remand. Moreover, our decision in *Kirkpatrick* governs our present analysis because *Kirkpatrick* is our earlier-decided precedent. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004).

exclusively to the state agency over which lower federal courts do not exercise appellate jurisdiction.[12]

## IV.

For these reasons, we conclude that the plaintiff's claims are moot.[13]  We therefore affirm the district court's judgment.

*AFFIRMED*

---

[12] We similarly reject Johnson's suggestion at oral argument that remand is the only proper remedy because the ALJ erred in declining to hold an evidentiary hearing.  Again, this argument treats the district court's jurisdiction as appellate in nature.  And, as discussed above, the district court was empowered to receive additional evidence at the request of either party.  20 U.S.C. § 1415(i)(2)(A), (C).

[13] Because we hold that the students' withdrawal from CMS rendered moot their claims for prospective relief, we do not address the district court's alternative conclusion that the parties voluntarily altered their legal relationship in November 2018 by adopting a new IEP for A.J. and by agreeing to evaluations for T.S.