**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-2003**

CHERI MILLER, as parent or guardian of minor JM,

Plaintiff - Appellant,

v.

CHARLOTTE-MECKLENBURG SCHOOLS BOARD OF EDUCATION,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:20-cv-00493-MOC-DCK)

Argued:  January 25, 2023                          Decided:  April 6, 2023

Before RICHARDSON, QUATTLEBAUM, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Heytens wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

**ARGUED:** Andrew Kiernan Cuddy, CUDDY LAW FIRM PLLC, Auburn, New York, for Appellant. Kristopher Lee Caudle, CAMPBELL SHATLEY, PLLC, Asheville, North Carolina, for Appellee. **ON BRIEF:** Christopher Z. Campbell, CAMPBELL SHATLEY, PLLC, Asheville, North Carolina, for Appellee.

TOBY HEYTENS, Circuit Judge:

This appeal raises a host of issues under the Individuals with Disabilities Education Act (IDEA). We deny the defendant school district's motion to dismiss the appeal and affirm the district court's grant of summary judgment for the school district.

I.

The IDEA and its implementing regulations promise students with disabilities a "free appropriate public education" tailored to their individual needs. 20 U.S.C. § 1400(d). Only children with at least one qualifying disability are entitled to services. The statute includes 10 categories of disability, including "autism spectrum disorder" and "specific learning disabilit[y]." § 1401(3)(A). Federal law allows States to develop their own criteria for assessing whether a child falls within a qualifying category. 34 C.F.R. § 300.111.

If a child has a qualifying disability, the IDEA requires the relevant educational agency to create an individualized education program (IEP). See generally 20 U.S.C. § 1414(d). An IEP must lay out measurable annual goals designed to meet the child's needs and provide accommodations and services to aid in academic achievement and functional performance. § 1414(d)(1)(A).

Parents have several procedural protections under the IDEA. A parent who believes their child is eligible for services "may initiate a request for an initial evaluation to determine" whether the child has a qualifying disability. 20 U.S.C. § 1414(a)(1)(B). "[I]f the parent disagrees with an evaluation obtained by [a] public agency," the "parent has the right to an independent educational evaluation at public expense." 34 C.F.R. § 300.502(b)(1).

2

A parent who questions "the identification, evaluation, or educational placement of [their] child" may also commence a formal adjudicative process. 20 U.S.C. § 1415(b)(6)(A). In North Carolina, a parent begins that process by filing a complaint with the North Carolina Office of Administrative Hearings, which triggers "due process" proceedings before an administrative law judge (ALJ). See N.C. Gen. Stat. § 115C-109.6(a), (f); see also 20 U.S.C. § 1415(f), (h) (establishing rules for due process hearings). At the time relevant to this case, a parent could appeal an ALJ's final decision to a state review officer. See N.C. Gen. Stat. § 115C-109.9 (repealed). Finally, a "party aggrieved by the findings and decision" of the administrative process may "bring a civil action with respect to the complaint" in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

## II.

This case involves a student named J.M. In July 2018, a psychologist diagnosed J.M. with autism spectrum disorder. Based in part on that diagnosis, J.M.'s mother—plaintiff Cheri Miller—asked the local school district to evaluate J.M. for an IEP.

The school district convened a team to evaluate J.M.'s eligibility in the autism category and requested evaluations in several areas, including adaptive behavior, vision and hearing, educational, speech-language, occupational therapy, and autism rating scales. The team determined J.M. was not eligible for special education under the IDEA because he did not demonstrate at least three of the four impairments required to qualify as a student with autism needing special services as laid out in state policies. The school district thus declined to provide J.M. with an IEP.

3

Miller disagreed with the IEP team's conclusion and asked the school district to pay for additional evaluations in five areas it had considered before (adaptive behavior, educational, speech-language, occupational therapy, and autism). Miller also requested three new evaluations: psychological, assistive technology, and behavior/functional. The school district approved funding for the first five areas but declined to pay for the new evaluations.

Without waiting for another decision from the IEP team, Miller launched the administrative review process by petitioning for a contested case hearing. Miller's initial filing alleged seven violations of the IDEA. At oral argument before the ALJ, Miller added a claim of disenfranchisement of the parents. The ALJ granted the school district's motion for summary judgment on all seven counts and rejected Miller's parental disenfranchisement claim. On appeal, a state review officer affirmed the ALJ's decision.

Miller then filed a complaint in federal district court, seeking seven forms of relief. After discovery, the district court entered summary judgment for the school district, stating it was "affirm[ing]" the decisions of the ALJ and state review officer. JA 65.

III.

We deny the school district's motion to dismiss this appeal for lack of subject matter jurisdiction. That motion relies on *Johnson v. Charlotte-Mecklenburg Schools Board of Education*, 20 F.4th 835 (4th Cir. 2021), which issued after the district court's decision. According to the school district, *Johnson* establishes that Miller "seek[s] relief that is impossible for this Court, or any federal court, to grant," which makes this case moot. ECF 18 at 8.

4

The school district's arguments are more appropriately directed to the district court's jurisdiction than our own. Whether the district court had original subject matter jurisdiction and whether this Court has appellate jurisdiction are distinct questions. Under 28 U.S.C. § 1291, this Court has jurisdiction to review "all final decisions of the district courts" within the Fourth Circuit, and here the district court issued a final decision in favor of the school district by granting summary judgment. We thus have—at minimum—appellate jurisdiction to review whether the district court had subject matter jurisdiction. See, *e.g.*, *Ameur v. Gates*, 759 F.3d 317, 322 (4th Cir. 2014). Indeed, in *Johnson* itself, this Court did not dismiss for lack of appellate jurisdiction. Instead, we "*affirm[ed]* the district court's judgment," which had "dismiss[ed] . . . the complaint as moot." 20 F.4th at 838, 846 (emphasis added).

## IV.

We turn next to the school district's argument that *Johnson* establishes the district court would lack jurisdiction to grant Miller's requested relief. See *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review" (quotation marks omitted)). We conclude *Johnson* establishes the district court would lack authority to grant some—but not all—of the relief sought in Miller's complaint.

In *Johnson*, this Court held that "[t]he limited, original jurisdiction of federal district courts in IDEA cases does not extend to appellate review of state administrative IDEA complaints." 20 F.4th at 845. For that reason, "district courts cannot affirm, reverse, or

5

vacate the decision of the state administrative agency," nor can they "remand an IDEA case to a state agency." *Id.* at 845–46 (quotation marks omitted).

To be sure, Miller's complaint sought various forms of relief *Johnson* holds a district court may not order, including "annul[ling]" the decisions of the ALJ and the state review board and "remand[ing] . . . this matter to a new ALJ for an evidentiary hearing." JA 20. But the complaint also sought at least one form of relief the district court could grant. The complaint asked the district court to order "compensatory education services" (*id.*), a form of relief *Johnson* specifically says is permitted. See *Johnson*, 20 F.4th at 840, 845. Indeed, *Johnson* emphasized that a plaintiff may "avoid dismissal" by "includ[ing] in her federal complaint a request for compensatory education." *Id.* at 845. Thus, even assuming *Johnson* reflects a truly jurisdictional rule—rather than recognizing limits on a district court's remedial authority—that rule would not require dismissal of Miller's entire complaint. See, *e.g.*, *K.I. v. Durham Pub. Schs. Bd. of Educ.*, 54 F.4th 779, 791–92 (4th Cir. 2022) (stressing the need to exercise "caution[] . . . about the overuse of the term 'jurisdiction,'" including in the IDEA context).

## V.

At this point, however, we part company with Miller. On the merits, we see no basis for disturbing the district court's grant of summary judgment for the school district.

## A.

We begin with a framing point. Miller relies heavily on various procedural violations she claims were committed during the state administrative proceedings. As earlier explained, however, federal courts do not superintend or review state administrative

6

proceedings under the IDEA, so any procedural violations that may have occurred during those proceedings were not for the district court to review. Instead, a federal court "offers its own independent *de novo* review and conclusion" about whether the defendant has violated the IDEA. *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 387 (4th Cir. 2000).

That is not to say, of course, that the previous administrative proceedings are irrelevant when a federal court adjudicates "an original civil action" under the IDEA. *Johnson*, 20 F.4th at 844. To the contrary, despite being "empowered to receive and consider evidence outside the administrative record," district courts must give "due weight to the underlying administrative proceedings." *Id.* (quotation marks omitted). When conducting its own "modified de novo review" (*id.*), a district court may certainly consider whether any procedural irregularities undermine the "deference" that would otherwise be due to "the findings of the administrative hearing officer." *Kirkpatrick*, 216 F.3d at 385. But, as described below, beyond making a bare allegation that the ALJ issued an incompetent decision, Miller does not explain how any of the alleged procedural defects she identified corrupted any administrative findings.

B.

We see no error in the district court's conclusion that the school district did not violate the IDEA's "child find" obligation. That obligation requires States to establish "policies and procedures to ensure" that "[a]ll children with disabilities residing in the State . . . are identified, located, and evaluated." 20 U.S.C. § 1412(a) & (a)(3)(A). States must also "develop[] and implement[]" "a practical method . . . to determine which children

7

with disabilities are currently receiving needed special education and related services." § 1412(a)(3)(A).

But the child find obligation does not require schools to provide an IEP to any student whose parent believes their child is entitled to one. Rather, when a school district has convened an IEP team and comprehensively evaluated a student's eligibility for services, and where the State maintains and follows detailed policies to evaluate children needing such services, the child find obligation has been satisfied. See, *e.g.*, *Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1196 (11th Cir. 2018) (school district fails to satisfy child find obligation when it "overlook[s] clear signs of disability" or "negligently fail[s] to order testing" but satisfies the child find obligation "by initiating the IDEA-eligibility process"). Miller's disagreement with the outcome of J.M.'s evaluation does not amount to a failure to conduct an evaluation in the first instance.

## C.

A stronger argument may be that the school district's eligibility determination was wrong and J.M. was entitled to an IEP. But Miller's opening brief develops no argument on that point beyond asserting that J.M. had "deficits," a "lack of meaningful progress," and "problems with focus and inattentiveness." Miller Br. 38–39. These may be characteristics of a student underperforming by a school's standards, but they are not, by themselves, necessarily indicative of a child with a qualifying disability under the then-existing North Carolina policies. The IDEA does not cover every student who is struggling in school; rather, its protections are limited to a student who has a qualifying disability and who, for that reason, "needs special education and related services." 20 U.S.C.

§ 1401(3)(A). But a student does not "need" such services if the student is already getting what would qualify as a free appropriate public education *without* them. And Miller's terse arguments fail to create a genuine dispute that her son "needed" an IEP, particularly given the "deference" due the administrative hearing officer on this point. *Kirkpatrick*, 216 F.3d at 385.

We also reject Miller's claim that the IEP team acted wrongfully in failing to follow the recommendations of private evaluators in determining J.M.'s eligibility for an IEP. The IDEA does not require school districts to defer to the opinions of private evaluations procured by a parent. To the contrary, the IDEA instructs school districts to rely on diverse tools and information sources in making an eligibility assessment. 20 U.S.C. § 1414(b)(2)(A).

### D.

Miller's remaining arguments are procedural. None of them requires us to disturb the district court's judgment.

First, Miller correctly notes that the school district did not complete J.M.'s initial evaluation within the required period. As the school district acknowledges, North Carolina policies implementing the IDEA instruct that such evaluations must be completed within 90 days of receiving a referral. Yet here the school district did not finish its initial evaluation until 110 days after Miller requested it.

This Court has held, however, that a bare procedural violation of the IDEA does not warrant a remedy unless a plaintiff shows the violation resulted in the student being denied a free appropriate public education. See *R.F. v. Cecil Cnty. Pub. Schs.*, 919 F.3d 237, 251–

52 (4th Cir. 2019). Miller has not met that burden. For starters, Miller failed to create a genuine dispute of material fact about whether J.M. was entitled to an IEP. See Part V(C), *supra*. Because J.M. was not shown to be entitled to services under the IDEA, he could not have been denied a free appropriate public education within the meaning of the statute.

What is more, even if J.M. were entitled to services under the IDEA, Miller offers nothing but conclusory assertions that the school district's 20-day delay in completing the initial evaluation prevented J.M. from receiving a free appropriate public education. Here, as elsewhere, "a party's self-serving opinion cannot, absent objective corroboration, defeat summary judgment." *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020) (alterations and quotation marks omitted).

Second, Miller argues the school district violated the IDEA by failing to assess J.M. for eligibility under the specific learning disability category. But Miller identifies no evidence the evaluations the school district conducted for autism would not also have allowed the school district to find J.M. eligible as a student with a specific learning disability. Indeed, based on the evaluations the school district did conduct, the IEP team was able to conclude J.M. *would not* have met the school district's criteria for an IEP under a specific learning disability either.

Finally, Miller challenges the school district's refusal to fund evaluations in "assistive technology" and "functional behavior" and its failure to initiate a due process

10

hearing to defend its decision as required by 34 C.F.R. § 300.502(b).[*] But, here again, even assuming the school district committed a procedural violation, no remedy is warranted unless the error resulted in J.M. being denied a free appropriate public education. See *R.F.*, 919 F.3d at 251–52. And because Miller's opening brief presents no argument that either of these alleged violations resulted in J.M. being denied any substantive rights under the IDEA, any such claim is now forfeited. See, *e.g.*, *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

*        *        *

We deny the school district's motion to dismiss the appeal and hold that the district court was not required to dismiss Miller's complaint for lack of jurisdiction. We affirm the district court's grant of summary judgment for the school district.

*SO ORDERED*

---

[*] The school district initially declined to pay for an assessment in a third area as well. That issue is now moot because the school district later provided the requested assessment.