# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 31, 2023

Lyle W. Cayce
Clerk

———————

No. 22-40634

———————

Elizabeth Perez, *as next friend of* O.P., *a minor*,

*Plaintiff—Appellant*,

*versus*

Weslaco Independent School District,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:21-CV-352

———————————————————————

Before Haynes and Engelhardt, *Circuit Judges*, and deGravelles, *District Judge*.[*]

Per Curiam:[*]

Elizabeth Perez filed an administrative complaint alleging that the Weslaco Independent School District failed to provide her son, O.P., with a free appropriate public education in violation of the Individuals with Disabilities Education Act ("IDEA"). The district court granted judgment

———————————

[*] United States District Judge for the Middle District of Louisiana, sitting by designation.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

on the administrative record in favor of Weslaco.  For the reasons discussed below, we AFFIRM.

## I.    Background
### A.  Statutory Background

As this is an IDEA case, we begin by discussing relevant provisions of the statutory framework.  The IDEA mandates that public schools provide a "free appropriate public education" to every "child[] with [a] disability."  20 U.S.C. § 1400(d)(1)(A).   The statute in turn defines a "child with a disability" as (1) a student with "a qualifying disability" who (2) "by reason thereof, needs special education and related services."  *Id.* § 1401(3)(A); *see also Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 215 (5th Cir. 2019).

The provision of IDEA-related services proceeds as follows.  First, a parent may request that a school district conduct a "full and individual initial evaluation" of their child to determine whether he or she is eligible for IDEA-services.  *See* 34 C.F.R. § 300.301(a), (c)(2)(i).  The school district is then required to conduct the evaluation, "[u]s[ing] a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the child."  *Id.* § 300.304(b)(1).  If the evaluation reveals that the student qualifies as a "child with a disability," the school district must next prepare an individualized education program ("IEP") to provide that student with a "free appropriate public education."  *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017).  An IEP is prepared by the child's parents, teachers, and school officials, and must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."  *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

If, however, a parent questions "the identification, evaluation, or education placement of the child," the parent may commence a formal

adjudicative process. 20 U.S.C. § 1415(b)(6)(A). In Texas, a parent begins that process by filing a due process complaint with the Texas Education Agency, which triggers a due process hearing before a special education hearing officer. 19 Tex. Admin. Code § 89.1165. A "party aggrieved by the findings and decision" of the administrative process may "bring a civil action with respect to the complaint" in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

### B. Factual Background

We turn now to the facts of this case. As noted above, Perez is the mother of O.P., a student in the Weslaco Independent School District ("Weslaco"). When O.P. was in the sixth grade, he failed the reading section of the State of Texas Assessments of Academic Readiness exam. Troubled by his performance, Perez took O.P. to a private psychologist, Dr. Rodriguez-Escobar, who diagnosed O.P. with Autism Spectrum Disorder, ADHD-inattentive type, unspecified anxiety, communication disorders, and educational problems. Dr. Rodriguez-Escobar noted, however, that her evaluation was not intended to replace a special education evaluation, and she advised Perez to consult with Weslaco to determine whether O.P. was eligible for special education services.

Perez provided Weslaco with Dr. Rodriguez-Escobar's report. After reviewing the report, Weslaco personnel consulted with O.P.'s teachers and ultimately determined that O.P. was ineligible for special education services at that time. Nevertheless, Weslaco determined that O.P. was eligible for Section 504[1] services, which Perez consented to. The next year, Weslaco

---

[1] Section 504 refers to § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), which prohibits federally funded programs from discriminating against individuals with disabilities. Under § 504, public schools must evaluate students with disabilities and create plans to aid students' access to the general curriculum. *See* 34 C.F.R. § 104.33. However,

contacted Perez to discuss O.P.'s Section 504 accommodations. Perez did not immediately respond, so Weslaco proceeded without her. Weslaco collected information from O.P.'s teachers, adjusted his accommodations, and again determined it was unnecessary to refer him to special education services at that time. However, Weslaco notified Perez of her right to request a special education evaluation pursuant to 34 C.F.R. § 300.301.

Perez did not request an evaluation—instead, litigation commenced when Perez filed a request for a due process hearing with the Texas Education Agency. In this request, she alleged that Weslaco violated the IDEA by (1) failing to identify O.P. as a student in need of special education services; (2) depriving O.P. of a free appropriate public education; and (3) denying O.P. and Perez certain procedural protections guaranteed by the Act.

After obtaining Perez's consent, Weslaco then evaluated O.P. In doing so, it relied on the results of assessments and tests from several different professionals, including a speech pathologist, a diagnostician, and a licensed specialist in school psychology. That comprehensive evaluation determined that O.P. (1) did not meet the coding criteria for a qualifying disability, (2) did not need special education services as a result of any disability, and (3) therefore, was not eligible for a free appropriate public education under the IDEA.

Following Weslaco's final eligibility determination, a special education hearing officer conducted a due process hearing. The hearing officer reviewed Perez's evidence—namely Dr. Rodriguez-Escobar's

_____

eligibility for § 504 accommodations does not necessarily equate to eligibility for a free appropriate public education under the IDEA—in other words, it's entirely possible for a child to qualify for accommodations under the former but not the latter. *See Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990–91 (5th Cir. 2014).

report—and the results of Weslaco's evaluation. After this extensive review, the hearing officer then issued an opinion concluding that Perez had failed to meet her burden to show that Weslaco had incorrectly evaluated O.P. Therefore, the hearing officer upheld Weslaco's determination that O.P. was ineligible for special education services.

Perez then filed this civil action in federal district court, and the parties subsequently filed cross motions for judgment on the administrative record. The district court concluded that (1) Weslaco correctly determined that O.P. was not a "child with a disability"; (2) because he was not a child with a disability, O.P. was not eligible for special education services; and (3) although Weslaco had committed several procedural violations of the IDEA, those violations were harmless because they did not impact the ultimate eligibility determination. The district court accordingly granted judgment in Weslaco's favor, and Perez timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction under 20 U.S.C. § 1415(i)(3)(A), and we have jurisdiction under 28 U.S.C. § 1291. In the IDEA context, there are two levels of review. At the first, the district court reviews the hearing officer's decision "virtually de novo." *See Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003). The district court must give the hearing officer's findings "due weight," but it then "must arrive at an independent conclusion based on a preponderance of the evidence." *Id.* (quotation omitted).

At the second level, we review the district court's "legal determinations de novo and factual questions for clear error." *Spring Branch Indep. Sch. Dist. v. O.W. by Hannah W.*, 961 F.3d 781, 790 (5th Cir. 2020) (quotation omitted). Clear error exists only if we are "left with the definite and firm conviction that a mistake has been committed." *E.R. ex rel. E.R. v.*

*Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 766 (5th Cir. 2018) (per curiam) (internal quotation marks and citation omitted). We apply these standards in IDEA cases, notwithstanding their resolution before the district court on summary judgment motions. *See Hous. Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000).

## III.    Discussion

On appeal, Perez raises two main points of error with the district court's judgment. First, she asserts that the district court erred in upholding Weslaco's determination that O.P. lacked eligibility for special education services. Second, she agrees with the district court that Weslaco committed several procedural violations of the IDEA—but she urges that the district court erred in concluding that those procedural violations were not actionable.

We begin with the determination of eligibility, as resolution of that issue will facilitate the outcome of the latter issue. Recall that the IDEA is limited only to "*children with disabilities*," not every student who is struggling with something. *See* 20 U.S.C. § 1400(d)(1)(A) (emphasis added); *see also Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 382 (5th Cir. 2007) ("Only certain students with disabilities, however, are eligible for IDEA's benefits."). Therefore, Weslaco was required to provide O.P. with special education services only if O.P. (1) had a qualifying disability and (2) "by reason thereof, need[ed] special education and related services." 20 U.S.C. § 1401(3)(A); *see also* 34 C.F.R. § 300.8(a)(1).

Weslaco conducted a full and independent initial evaluation and determined that O.P. did not satisfy those prerequisites; therefore, it concluded O.P. was ineligible for special education services. The hearing officer and district court both independently reviewed the results of Weslaco's evaluation. But, weighing the record evidence, the decisions

below each concluded that Weslaco had correctly determined O.P.'s eligibility.

We decline to disturb the district court's decision on appeal. "As is par for the course in contentious IDEA cases, the record includes evidence that supports each side." *Lisa M.,* 924 F.3d at 216. But reviewing the district court's factual findings under the clear error standard, we cannot "revers[e] unless we are left with a definite and firm conviction that a mistake has been committed." *Id.* at 217 (internal quotation marks and citation omitted). Our own appellate review does not leave us with such a conviction—rather, we are satisfied that there was sufficient evidence in the record to support the district court's approval of Weslaco's determination that O.P. was ineligible for special education services.

To start, Perez submitted lesser evidence demonstrating O.P.'s eligibility. Her primary support was Dr. Rodriguez-Escobar's evaluation, which diagnosed O.P. with various impairments. However, that evaluation was properly discounted for two main reasons. First, the evaluation "lacked educational context"—Dr. Rodriguez-Escobar did not review education records, solicit feedback from O.P.'s teachers, or observe O.P. in a classroom setting. Therefore, her evaluation did not have "proper foundation." Second, Dr. Rodriguez-Escobar did not herself recommend special education services or indicate that her evaluation was meant as a replacement for a special education evaluation. Rather, her report instructed Perez to consult with Weslaco to determine whether O.P. was eligible for such services. In any case, as courts have observed, "[t]he IDEA does not require school districts to defer to the opinions of private evaluations procured by a parent." *Miller v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 64 F.4th 569, 576 (4th Cir. 2023). Therefore, Weslaco was not required to adopt Dr. Rodriguez-Escobar's determinations wholesale, nor was the district court required to give it greater weight.

By contrast, Weslaco's evaluation, which indicated that O.P. did not need special education services as a result of a qualifying disability, was based on more evidence. Though the evaluation was not perfect, Weslaco did use "diverse tools and information sources" to assess O.P.'s eligibility. *See* 20 U.S.C. § 1414(b)(2)(A). Indeed, it solicited reports from a variety of professionals—a diagnostician, a licensed specialist in school psychology, and a speech pathologist. These professionals assessed O.P. using multiple formal and informal tests, personally observed O.P., interviewed O.P.'s teachers, and carefully reviewed his cumulative school records.

Given this evidence, we cannot conclude that the district court clearly erred in upholding Weslaco's eligibility determination. Rather, the record confirms the finding that O.P. did not meet the eligibility criteria for special education. Therefore, we affirm the district court's conclusion that Weslaco did not deny O.P. a free appropriate public education.

We turn now to Perez's remaining arguments, which are procedural. None of them, however, require us to disturb the district court's judgment. As the district court correctly noted, procedural violations of the IDEA do not warrant a remedy unless a plaintiff shows that the violation resulted in the student being denied a free appropriate public education. *Adam J.*, 328 F.3d at 812; *see also L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty.*, 879 F.3d 1274, 1278 (11th Cir. 2018) ("Only procedural violations [of the IDEA] that cause a party substantive harm will entitle plaintiffs to relief."); *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) (observing that a procedural violation alone "cannot qualify an otherwise ineligible student for IDEA relief"); *J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 70 (2d Cir. 2000) (noting "[student] was properly found to be ineligible for special education," therefore, "he was not denied a free appropriate public education"). Perez has not made that showing. *See, e.g., Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 972 (5th Cir.

No. 22-40634

2016). Accordingly, we agree with the district court that any such procedural violations are not actionable here.

### IV.    Conclusion

We conclude that the district court did not err in granting judgment on the administrative record in favor of Weslaco. Accordingly, we AFFIRM.